STEVEN S. KAUFHOLD, ESQ. (SBN No. 157195)
Email: skaufhold@kaufholdgaskin.com
JONATHAN GASKIN, ESQ. (SBN No. 203625)
Email: jgaskin@kaufholdgaskin.com
LIANA MAYILYAN, ESQ. (SBN No. 295203)
Email: lmayilyan@kaufholdgaskin.com
KAUFHOLD GASKIN GALLAGHER LLP
485 Pacific Avenue
San Francisco, CA 94133
Telephone: 415.881.3189
Facsimile: 415.480.6076

Attorneys for Director Defendants
John Bruggeman, Steve Westly,
Frank Creer, Dave Coglizer,
Susan McArthur, Alan Greenberg,
and Richard Rock

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD., individually, and derivatively on behalf of Lunera Lighting, Inc.<br><br>Plaintiff,<br><br>vs.<br><br>JOHN BRUGGEMAN, STEVE WESTLY, FRANK CREER, DAVE COGLIZER, SUSAN MCARTHUR, ALAN GREENBERG, RICHARD ROCK, TYNAX, INC., ADVANCED TRADING LLC, OEO ENERGY SOLUTIONS, LLC, JOHN EINARSEN, LAWRENCE BUTZ, and LUNERA LIGHTING, INC.,<br><br>Defendants. | CASE NO. 3:21-cv-08489-MMC<br><br>**DIRECTOR DEFENDANTS JOHN BRUGGEMAN, STEVE WESTLY, FRANK CREER, DAVE COGLIZER, SUSAN MCARTHUR, ALAN GREENBERG, AND RICHARD ROCK'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED DERIVATIVE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    May 27, 2022<br>Time:    9:00 a.m.<br>Crtrm.: 7 – 19th Floor<br><br>Assigned to Hon. Maxine Chesney |

## NOTICE OF MOTION AND MOTION

TO THE COURT, PLAINTIFF, AND PLAINTIFF'S ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Director Defendants John Bruggeman, Steve Westly, Frank Creer, Dave Coglizer, Susan McArthur, Alan Greenberg and Richard Rock (collectively, the "Director Defendants") will and hereby do move this Court to dismiss Plaintiff's First Amended Verified Derivative Complaint ("FAC") against them for failure to state a claim upon which relief can be granted pursuant to Rules 8(a), 9(b), 12(b)(6), and 23.1 of the Federal Rules of Civil Procedure.  This Motion shall be heard on May 27, 2022 at 9:00 a.m., or as soon thereafter as it may be heard, before the Honorable Maxine Chesney, United States District Judge, in Courtroom 7, 19th Floor of the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the complete files and records of this action, and such other matters and arguments as may come before this Court, including those raised in connection with reply briefing and oral argument relating to this motion.

## ISSUES TO BE DECIDED

1. Whether applicable Delaware law forecloses claims filed against the Director Defendants after the Company's dissolution.

2. To the extent that the claim for breach of fiduciary duty is derivative, whether Plaintiff has standing to bring a derivative claim.

3. Whether Plaintiff can state a claim for breach of fiduciary duty against any of the Director Defendants where it seeks recovery only for itself and such direct claims are barred by applicable Delaware law.

4. Whether Plaintiff has stated a claim for breach of fiduciary duty against any of the Director Defendants.

5. Whether Plaintiff is excused from Delaware's requirement for pre-suit demand.

6.   Whether the Director Defendants are protected from liability by the business judgment rule.

7.   Whether the Director Defendants are protected from liability by Lunera's Exculpation Clause.

8.   Whether Plaintiff has stated a claim against any of the Director Defendants for alleged fraudulent transfer of Lunera patents.

9.   Whether Plaintiff has stated a claim against any of the Director Defendants for alleged fraudulent transfer of Lunera inventory.

Dated: March 8, 2022                    KAUFHOLD GASKIN GALLAGHER LLP


                                        By:     /s/ Jonathan Gaskin
                                                Steven Kaufhold
                                                Jonathan Gaskin
                                                Attorneys for the Director Defendants

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 4

III.    LEGAL STANDARD ....................................................................................... 7

IV.     ARGUMENT ................................................................................................... 10

        A.      The Director Defendants Have No Personal Liability After Lunera's
                Statutory Dissolution ........................................................................ 11

        B.      Plaintiff Lacks Standing to Assert Any Thinly Disguised Direct Breach of
                Fiduciary Duty Claim Against the Director Defendants....................... 12

        C.      Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Against the
                Director Defendants ............................................................................. 13

        D.      Plaintiff Failed to Make Demand or Plead Demand Excusal .............. 14

        E.      The Director Defendants Are Protected By The Business Judgment Rule .......... 14

        F.      The Director Defendants Did Not Breach Their Fiduciary Duties ...................... 16

        G.      Lunera's Exculpation Clause Eliminates Duty of Care Claims........................... 17

        H.      The Director Defendants Have No Duty of Loyalty to Plaintiff ........................ 17

        I.      Plaintiff Fails to State a Claim for Fraudulent Transfer of Patents Against
                the Director Defendants ....................................................................... 18

        J.      Plaintiff Fails to State a Claim for Fraudulent Transfer of Inventory
                Against the Director Defendants............................................................ 20

V.      CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Ainscow v. Sanitary Co. of Am.,*
  180 A. 614 (Del.Ch.1935)................................................................ 14

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ........................................................... 10, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................... 7

*Emerald P'rs v. Berlin (Emerald II)*,
  787 A.2d 85 (Del. 2001) ............................................................... 17

*In re Dollar Thrifty S'holder Litig.*,
  14 A.3d 573 (Del.Ch.2010)............................................................ 10

*In re Krafft-Murphy Co., Inc.*,
  82 A.3d 696 (Del. 2013) ......................................................... 2, 8, 12

*In re Orchard Enters., Inc. S'holder Litig.*,
  88 A.3d 1 (Del.Ch.2014)............................................................ 10, 15

*In re Trados Inc. S'holder Litig. (Trados I)*,
  2009 WL 2225958 (Del.Ch. July 24, 2009).................................... 15

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) ........................................................ 8

*Malpiede v. Townson,*
  780 A.2d 1075 (Del. 2001) ........................................................... 17

*N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*,
  930 A.2d 92 (Del. 2007) ............................................................. 9, 12

*Production Resources Group, LLC v. NCT Grp., Inc.*,
  863 A.2d 772 (Del. Ch. 2004)................................................... 3, 9, 16

*Quadrant Structured Prod. Co. v. Vertin*,
  102 A.3d 155 (Del. Ch. 2014)................................................... passim

*Richter v. CC-Palo Alto, Inc.*,
  2017 WL 4236992 (N.D. Cal. Sept. 25, 2017) ................................. 8

*Semegen v. Weidner,*
  780 F.2d 727 (9th Cir. 1985) ......................................................... 8

*Shandler v. DLJ Merchant Banking, Inc.,*
  2010 WL 2929654 (Del.Ch. July 26, 2010) ........................................................... 17

*Sohland v. Baker,*
  141 A. 277 (Del.1927) ............................................................................................. 14

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) .................................................................................. 8

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) .................................................................................... 8

*Trenwick American Litig. v. Ernst & Young L.L.P.,*
  906 A.2d 168 (Del.Ch. 2016) ............................................................................ 10, 16

*Vess v. Ciba-Geigy Corp.,*
  317 F.3d 1097 (9th Cir. 2003) .................................................................................. 8

**Statutes**

6 Del. C. § 1304(a)(1) ................................................................................... 18, 20

6 Del. C. § 1304(b) ....................................................................................... 19, 21

8 Del. C. § 102(b)(7) ............................................................................................ 17

8 Del. C. § 141(a) ................................................................................................. 10

8 Del. C. § 281 ........................................................................................... 7, 8, 11

8 Del. C. § 281(b) ............................................................................................ 7, 11

8 Del. C. § 281(c) ...................................................................................... 2, 4, 8, 11

8 Del. C. § 327 ..................................................................................................... 10

Fed. R. Civ. Proc. 9(b) ..................................................................................... 8, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Jiaxing Super Lighting Electric Appliance Co., Ltd. ("Super Lighting" or "Plaintiff"), a business supplier to now-dissolved and putative nominal defendant Lunera Lighting, Inc. ("Lunera"), filed suit after its prior campaign of litigation, arbitration and threats failed to secure it a full recovery of the funds it claims to be owed by Lunera. In doing so, Super Lighting demanded that Lunera and its leaders favor Super Lighting over other creditors of the Company and pay it in full without regard to how that would impact other creditors.

In response, the former directors of Lunera including the moving parties here:  John Bruggeman, Steve Westly, Frank Creer, Susan McArthur, Richard Rock, Dave Coglizer, and Alan Greenberg (collectively, the "Director Defendants") demonstrated a host of legal issues with Super Lighting's supposed claims.  Rather than try to defend the validity of its alleged claims against the Director Defendants, Super Lighting unilaterally filed the First Amended Complaint ("FAC") but failed to plead any viable claim against the Director Defendants.

Super Lighting still seeks to hold the Director Defendants individually liable for the collective business decisions and business debts of Lunera, notwithstanding the allegations of its own FAC that Lunera engaged in a reasoned process to maximize the value of the company for *all* stakeholders, not just Super Lighting.  Specifically, Super Lighting alleges that:

- Super Lighting was one of multiple parties – both creditors and investors – with an interest in the assets of Lunera;

- The Director Defendants sought and received the advice of counsel regarding their own obligations to the multiple parties seeking payment from Lunera;

- The Director Defendants caused Lunera to negotiate directly with Super Lighting and to include it in potential transactions that could have benefitted all residual beneficiaries of Lunera;

- Super Lighting vetoed multiple proposed acquisitions of Lunera that would have yielded millions of dollars of value for all residual beneficiaries of Lunera –

including vetoing and killing the "Elite Transaction" that Super Lighting now, in
hindsight, claims would have been ideal;

- Super Lighting consistently pursued a full recovery for itself that left no assets for
  other creditors, investors, or shareholders; and

- Lunera has dissolved and paid its remaining assets on a pro rata basis to its
  creditors with no recovery for investors.

As demonstrated by these allegations, Super Lighting is simply unhappy that, after it rejected the alternative business proposals that would have allowed Lunera to continue operating, the Director Defendants exercised their business judgment to liquidate the company in a manner that did not favor Super Lighting more than other stakeholders.  Significantly, while Super Lighting chose to file pre-dissolution litigation and arbitration claims against Lunera itself, no such claims were filed pre-dissolution against the Director Defendants.  Instead, Super Lighting waited over two years after Lunera's dissolution to file this extraordinarily overreaching litigation against the Director Defendants.

Unfortunately for Super Lighting, Delaware law specifically forecloses the exact kind of post-dissolution claims against former directors that it seeks to pursue here.  Specifically, Delaware Code Section 281(c) provides: "Directors of a dissolved corporation or governing persons of a successor entity which has complied with subsection (a) or (b) of this section shall not be personally liable to the claimants of the dissolved corporation."  So it is here.  The Amended Complaint and documents subject to judicial notice confirm that Lunera's dissolution complied with Section 281(b) and, accordingly, the Director Defendants can have no liability here.  *See In re Krafft-Murphy Co., Inc.*, 82 A.3d 696, 703 (Del. 2013) (distinguishing between post-dissolution creditor claims against companies and post-dissolution claims against former directors, which are foreclosed).  The Delaware Supreme Court has stated specifically that, "[f]inally, §§ 281(c) and 282 provide a 'safe harbor' from liability to directors and shareholders of corporations that have complied with § 281(a) or (b)." *Id.*

Moreover, even if Super Lighting could maintain post-dissolution claims against the Director Defendants – and it cannot – its alleged claims in the FAC would fail to state a claim.

Applicable Delaware law, which governs the conduct of the directors of Delaware companies, such as Lunera here, provides expressly that the Director Defendants owed a fiduciary duty to Lunera at all times.  They owed no direct fiduciary duty to Super Lighting, nor any other particular creditor.  Instead, the Director Defendants were required to attempt to maximize the value of Lunera for the benefit of all residual beneficiaries.  *Production Resources Group, LLC v. NCT Grp., Inc.,* 863 A.2d 772, 791 (Del. Ch. 2004) ("[t]he directors continue to have the task of attempting to maximize the economic value of the firm."); *see also Quadrant Structured Prod. Co. v. Vertin,* 102 A.3d 155, 185–86 (Del. Ch. 2014) (rejecting as a matter of law allegations that directors of an insolvent Delaware company must "pursue a conservative strategy and prepare for liquidation.").

Applying these standards to the allegations of the FAC, Super Lighting's purported claims against the Director Defendants fail for multiple reasons:

With respect to the alleged breach of fiduciary duty claim against the Director Defendants, (a) the Director Defendants owe no direct fiduciary duty to Super Lighting as a matter of law and, given that their cosmetic amendments to substitute "Lunera" for "Super Lighting" fail to change the fact that Super Lighting transparently seeks recovery only for Super Lighting, that claim is barred by Delaware law; (b) Super Lighting has not pleaded specific facts which establish standing to bring derivative claims against the Director Defendants on behalf of Lunera; (c) Super Lighting has not and cannot plead a plausible claim for breach of fiduciary duty against the Director Defendants given the allegations of the FAC that show they sought and received relevant legal advice and that they tried to maximize the value of Lunera for all beneficiaries; (d) Super Lighting's breach of fiduciary duty claims based on alleged lack of due care are defeated by the Company's exculpation clause which protects the decision-making of the board; and (e) Super Lighting's breach of fiduciary duty based on breach of the duty of loyalty fail because the Director Defendants owed loyalty to all Lunera residual beneficiaries, not just Super Lighting.

With respect to alleged claims against the Director Defendants for fraudulent transfer of Lunera inventory and Lunera patents, Super Lighting has failed to plead a plausible claim against

the Director Defendants.  Specifically, the facts pleaded by Super Lighting demonstrate that the Director Defendants tried to balance the interests of all Lunera residual beneficiaries and did not violate the law by not acceding to Super Lighting's demand that all company assets be paid over to it.

In sum, Super Lighting has not – and cannot – possibly state a post-dissolution claim against the Director Defendants in light of the Section 281(c) statutory "safe harbor."  Moreover, even if post-dissolution claims against former directors were permitted under applicable Delaware law – and they are not – Super Lighting would still have no claim against the Director Defendants here because it has failed to establish standing and failed to plead any plausible claim.  Both the facts and the law require that the claims against the Director Defendants be dismissed.  Here are the facts.

## II.    FACTUAL BACKGROUND

Lunera, a Delaware corporation, acted as a distributor of its own branded lighting products.  FAC ¶ 5.  "Lunera purchased products from manufacturers such as Super Lighting, branded them, and resold them to retail lighting distributors."  *Id.*  The company was dissolved on July 30, 2019.  *Id.*

Prior to Lunera's dissolution, Super Lighting was a supplier to Lunera and, later, one of many creditors.  FAC ¶¶ 4-5, 27 ("Super Lighting was at all relevant times Lunera's largest supplier of traditional LED lighting products.").  In late 2017, Lunera faced deepening financial challenges and sought financial accommodations from Super Lighting.  *Id.* ¶ 28.

In 2018, Lunera candidly disclosed more information regarding its challenges to Super Lighting, including in a presentation as follows: "Additionally, in April 2018, Lunera, through Director Defendant Bruggeman, delivered a presentation to Super Lighting's CEO that included Lunera's current assets and liabilities. Bruggeman's presentation showed that Lunera's total current liabilities of $18.6 million exceeded the total sum of its assets of $13.6 million."  *Id.* ¶ 44. Significantly, Super Lighting does not challenge in any way the accuracy of the information that it received in the presentation.

Moreover, Lunera's board determined, and communicated to Super Lighting, that the best opportunity for Lunera to survive and provide value to all residual beneficiaries – both creditors and shareholders – was for the company to remain in business continuing to sell branded lighting while also pursuing research and development of additional "Internet of Things" products. *Id.* ¶ 30 ("Lunera pleaded with Super Lighting to continue shipping new products while it was paying off the outstanding amounts and suggested that, without Super Lighting's commitment, Lunera would not be able to generate the revenues needed to pay off the debt."); *Id.* ¶ 38 ("In a February 2018 email, Lunera represented to Super Lighting that 'profits from [Lunera's] standard lamp business are reallocated to R&D for smart lamps,' and that Lunera's business plan was 'to develop and focus on the smart lamp technology.'").[1]

Not content to be patient and see if Lunera's strategy of continuing to sell branded lighting while racing to develop higher margin "smart" lighting products would be successful, Super Lighting first drastically increased its pricing to Lunera and then stopped selling products to Lunera and filed suit against it in August 2018. *Id.* ¶ 40. The next month, Lunera had a board meeting and the Director Defendants were briefed regarding legal issues, including fiduciary duty. *Id.* ¶ 47-53. Super Lighting neither claims the advice was incorrect, nor pleads any facts showing that the Director Defendants disregarded the advice they received. *Id.*

Following the September 2018 board meeting, Lunera evaluated offers from third parties to acquire the Company, including assumption of or paying off the amounts owed to Super Lighting. *Id.* ¶¶ 57-58. Lunera received multiple acquisition offers. *Id.* Pursuant to the terms of the Super Lighting supplier agreement, Lunera needed Super Lighting to consent to complete any sale of itself. *Id.* ¶ 57 ("The Director Defendants knew that Super Lighting's consent was required for any acquisition given its status as Lunera's largest creditor.").[2] Lunera brought each available transaction to Super Lighting and, rather than consenting to any deal, Super Lighting

---

[1] The FAC references Lunera's work with Oro Networks to develop its Internet of Things ("IoT") technology and products and alleges that Lunera controlled "100 %" of Oro's decision-making. *Id.* at ¶¶ 36-38. Notwithstanding this, Super Lighting makes no claims against Oro or Mr. Malik.

[2] Super Lighting's ability to block mergers and acquisitions was contractual and derived from its contracts with Lunera, not solely from its status as a creditor.

held Lunera's future hostage and pushed for terms that only benefitted itself until it killed every deal. *Id.* ¶¶ 58-61, 63-64, 67-68.  Super Lighting did so despite express oral and written warnings in early November 2018 from Lunera and Lunera's counsel that, without a deal, Lunera would have to shut down operations and liquidate assets. *Id.* ¶¶ 64, 66, 69.

With shipments of product terminated and litigation pending against Lunera, Super Lighting overplayed its hand by rejecting every single acquisition offer that Lunera received. *Id.* ¶¶ 58-61, 63-64.  Indeed, Super Lighting admits as much, acknowledging that it rejected an acquisition offer of Lunera by Elite that would have provided $6.9 million in value and included assumption by Elite of Lunera's debt to Super Lighting (¶ 64) and then later hypocritically whining that the Director Defendants were not able to close the $6.9 million Elite deal. *Id.* ¶ 76. Looking back in hindsight, Super Lighting now admits, as it must, that the proposed Elite deal "would have helped maximize the value of Lunera for the benefit of its residual claimants. . . ." *Id.* ¶ 76.

Knowing that its refusal to sell product and litigation against the company were taking a heavy toll on Lunera – which had dwindling cash and inventory (¶ 82) – Super Lighting tried and failed to place its own interests above those of secured creditors, other creditors and investors by seeking to attach $9.9 million of Lunera assets. *Id.* ¶¶ 82-84.

Faced with the reality that Super Lighting would not permit it to continue in business, driven home by Super Lighting rejecting the Elite deal (and every other option), Lunera was forced to cease business operations.  Accordingly, Lunera sold both its remaining inventory and a portfolio of hardware patents to third parties, unaffiliated with any of the Director Defendants. These sales were made with the advice of counsel, without special consideration of any party, and to maximize value. *Id.* ¶¶ 97-99 ("Bruggeman further testified that he wanted to maximize the value of the assets sold and return payment to creditors."). Complaint ¶ 91 ("Bruggeman testified that the goal was to sell Lunera's remaining assets '**with no consideration of any party**'") (emphasis in original).  That neutral sale of assets for the benefit of all residual beneficiaries incensed Super Lighting because it frustrated Super Lighting's self-centered attempts to jump the line of creditors and enrich itself from Lunera's remaining assets at the

expense of all other creditors.  FAC ¶ 99 and ¶ 115 ("the inventory, Patents, and IoT assets could and should be available and reserved for the … satisfaction of Super Lighting's claim.").  Six months later, in June 2019, Super Lighting received an uncontested (because Lunera ran out of funds) federal court judgment against Lunera.  *Id.* ¶ 186 ("On June 12, 2019, the United States District Court for the Northern District of California granted super Lighting's Petition to Confirm Arbitration Award and entered a judgment against Lunera in the amount of $14,452,997. . . .").

Following the advice of counsel and pursuant to Delaware's dissolution statute (8 Del. C. § 281), Lunera subsequently dissolved on July 30, 2019.[3]  *Id.* ¶ 188.  At the time of the dissolution, Lunera publicly filed a Plan of Distribution pursuant to 8 Del. C. § 281(b), the Company's remaining funds were distributed, pro rata to Lunera's creditors and its shareholders received nothing.  Pursuant to Delaware law, following Delaware's statutory process shields the Director Defendants from personal liability to Lunera's creditors, including Super Lighting.  8 Del. C. § 281.  More than two years after Lunera dissolved, Super Lighting filed this action purporting to act on behalf of Lunera.  Prior to filing, Super Lighting made no derivative demand on the Director Defendants or any other party.  *Id.* ¶ 205 ("Super Lighting has not made a demand upon the Director Defendants (each of who [sic] made up the entire Lunera board at all relevant times) because such demand would be futile and is excused.").  Finally, although it has made cosmetic changes to nominally seek recovery for Lunera, the gravamen of the FAC, like the prior express statements of the Complaint, is that Super Lighting seeks recovery only for itself.  Complaint at pp. 51-52; FAC ¶¶ 2, 3, 55, 78, 83, 115, 118, 137(c), 173(c).

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the

---

[3] A true and correct copy of Lunera's dissolution documents, including Lunera's Plan of Distribution, incorporated by reference in the FAC, are attached to the accompanying Director Defendants' Request for Judicial Notice ("RJN") as Exhibit 1. The Delaware Secretary of State Entity Status Report reflecting the dissolution date and status is attached as Exhibit 3.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "In all cases, evaluating a complaint's plausibility is a context-specific endeavor that requires courts to draw on its judicial experience and common sense." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (*quoting Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

Claims that sound in fraud are subject to a heightened pleading standard. Fed. R. Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (recognizing that claims "grounded in fraud" or which "sound in fraud" must meet the Rule 9(b) pleading standard, even if fraud is not an element of the claim). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  This requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  In other words, fraud or claims asserting fraudulent conduct must generally contain more specific facts than is necessary to support other causes of action. *Richter v. CC-Palo Alto, Inc.*,  2017 WL 4236992, at *4 (N.D. Cal. Sept. 25, 2017).

When Delaware corporations dissolve pursuant to Delaware's statutory scheme set forth at 8 Del. C. § 281, directors of the dissolved corporation which has complied with either § 281(a) or § 281(b) "shall not be personally liable to the claimants of the dissolved corporation."  8 Del. C. § 281(c).  8 Del. C. § 281(c) acts as a "safe harbor" for directors of dissolved corporations that have complied with the provisions of Del. C. § 281(b).  *In re Krafft-Murphy Co., Inc.*, 82 A.3d at 703.

"The directors of a Delaware corporation owe fiduciary duties to the corporation that they

serve." *Quadrant*, 102 A.3d at 171.

In contrast, no Delaware statute imposes a fiduciary duty on directors of a Delaware corporation in favor of any creditor and the Delaware Supreme Court has expressly declined to create such a duty. *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 103 (Del. 2007) (Creditors "have no right to assert direct claims for breach of fiduciary duty against corporate directors.") (emphasis in original). This is because "creditors are afforded protection through contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights." *Id.*, 930 A.2d at 99. Instead, "[t]he fiduciary duties that creditors gain derivative standing to enforce are not special duties to creditors, but rather the fiduciary duties that directors owe to the corporation to maximize its value for the benefit of all residual claimants." *Quadrant*, 102 A.3d at 176 (*citing Gheewalla*, 930 A.2d at 101) (emphasis added).

Since Delaware directors owe their fiduciary duty to the company – and not directly to creditors – Delaware courts routinely hold that directors of insolvent or near insolvent companies have no obligation to simply liquidate assets for the benefit of creditors. *Quadrant*, 102 A.3d at 185 ("Current Delaware law does not require the Board to shut down [the company's] business and manage towards a near-term dissolution for the benefit of creditors.").

Instead, directors may use their business judgment to pursue strategies and transactions that – if successful – would benefit the company as a whole and all of its residual beneficiaries. *See Production Resources*, 863 A.2d at 791 (even when the company is insolvent, "[t]he directors continue to have the task of attempting to maximize the economic value of the firm."); *see also*, *Quadrant*, 102 A.3d at 192 ("Depending on the nature of the investments, a riskier strategy could return greater value for the Company and all of its residual claimants, including its creditors. The Complaint does not contain sufficient allegations to call into question the rationality of a riskier investment approach.").[4]

---

[4] "Even when a firm is insolvent, its directors may, in the appropriate exercise of their business judgment, take action that might, if it does not pan out, result in the firm being painted in a deeper hue of red. The fact that the residual claimants of the firm at that time are creditors does not mean that the directors cannot choose to continue the firm's operations in the hope that they

The default rule for evaluation of decisions of directors of Delaware companies – such as Lunera – is the familiar business judgement rule. *Quadrant*, 102 A.3d at 183. "The rule presumes that 'in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.' *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). Unless one of its elements is rebutted, 'the court merely looks to see whether the business decision made was rational in the sense of being one logical approach to advancing the corporation's objectives.' *In re Dollar Thrifty S'holder Litig.*, 14 A.3d 573, 598 (Del.Ch.2010) (Strine, V.C.). 'Only when a decision lacks any rationally conceivable basis will a court infer bad faith and a breach of duty.' *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 34 (Del.Ch.2014).'" *Id*.

Importantly, unlike shareholder derivative claims, no Delaware statute provides for derivative claims by creditors, much less derivative claims made on behalf of dissolved companies.[5] "Section 327 is 'the only statutory provision [in the Delaware General Corporation Law] dealing with derivative actions.'" *Quadrant*, 102 A.3d at 178. Section 327 does not reference claims by creditors in any way. To the extent that the Delaware courts have permitted derivative claims by creditors, those situations have not been on behalf of dissolved companies, such as Lunera. Instead, the Court of Chancery has noted that, "[f]or a plaintiff obtain the right to compel the corporation to sue, the plaintiff must establish demand futility or demand refusal as a matter of substantive Delaware law." *Quadrant*, 102 A.3d at 181-182.

---

can expand the inadequate pie such that the firm's creditors get a greater recovery. By doing so, the directors do not become a guarantor of success." *Trenwick American Litig. v. Ernst & Young L.L.P.*, 906 A.2d 168, 174 (Del.Ch. 2016).

[5] Nor does any Delaware statute authorize derivative creditor claims absent demand. *See Quadrant,* 102 A.3d at 177 (recognizing the unsettled nature of Delaware law regarding the need for demand by creditors seeking to act on behalf of Delaware companies and holding "[t]his decision need not determine whether creditor-plaintiffs should have to comply with other substantive legal doctrines, such as demand excusal or demand refusal, because the defendants have not raised them.") Here, the Director Defendants do challenge the standing of Super Lighting to bring a derivative creditor claim under the facts as pleaded and, because Section 141(a) entrusts governance of Delaware corporations to their directors, "[i]t is therefore possible that creditors could be required to comply with the doctrines of demand futility and demand excusal." *Quadrant*, 102 A.3d at 182.

IV.     ARGUMENT

A.  **The Director Defendants Have No Personal Liability After Lunera's Statutory Dissolution**

Pursuant to legal advice and Delaware law, Lunera formally dissolved on June 21, 2019 and it was recorded on July 30, 2019.  FAC ¶ 188; RJN Exhibits 1, 3. As part of that dissolution, Lunera's assets were paid out pro rata to Lunera's residual beneficiaries, and Lunera's shareholders received nothing.  *Id*.  More than two years later, Super Lighting filed its complaint and then the FAC– which is notable for what it does not allege and thus concedes.  Super Lighting does not claim that it ever challenged or opposed the Lunera dissolution (because it did not).  Super Lighting does not allege that anything was improper about Lunera's statutory dissolution.  Super Lighting does not deny that residual beneficiaries were paid out pro rata per dissolution.  Super Lighting does not plead any facts regarding Lunera favoring any other creditor in its dissolution.    Nor does Super Lighting accurately allege anything to counter the fact that the Director Defendants do not have any personal liability to creditors of Lunera – such as Super Lighting – because of the protections of 8 Del. C. § 281(c): "Directors of a dissolved corporation or governing persons of a successor entity which has complied with subsection (a) or (b) of this section shall not be personally liable to the claimants of the dissolved corporation."

Instead, Super Lighting makes the blatantly false allegation that "[n]or has Lunera adopted any plan of distribution since its dissolution pursuant to Section 281(b)."  FAC ¶ 190.  However, the Delaware Secretary of State public filing system shows that Lunera publicly filed its plan on July 30, 2019 – at the same time as its dissolution.  RJN Ex. 3.  That judicially noticeable plan (subsection 4 of the "Plan of Complete Dissolution and Liquidation of Lunera Lighting, Inc.") is expressly referenced in the Complaint and FAC and was attached as an exhibit to Lunera's prior RJN and filed with this Court.  FAC fn. 1, ¶ 188; RJN Ex. 1 pp.12-14, 22-24.  It is also an exhibit to the current RJN and expressly states that it was adopted in accordance with § 281(b) and is boldly labeled "**Plan of Distribution**" and specifically mentions Super Lighting at Section 4.  RJN Ex. 1 pp.12-14, 22-24, ¶¶ 1(ii), 4.  Super Lighting's allegation that no predicate § 281(b) plan of distribution was adopted is demonstrably untrue.  Instead, Lunera did adopt a Plan of Distribution pursuant to 8 Del. C. § 281(b) and did publicly

1   file that plan with the Delaware Secretary of State.  Consequently, and entirely dispositive of

2   this lawsuit, Lunera's directors are firmly within the parameters of Delaware's safe harbor

3   pursuant to 8 Del. C. § 281 (c) and all of Super Lighting's claims against the Director

4   Defendants must be dismissed because they cannot be held personally liable for the claims of

5   creditors such as Super Lighting.  *In re Krafft-Murphy Co., Inc.,* 82 A.3d at 703 (Del. 2013)

6   ("§§ 281(c) and 282 provide a 'safe harbor' from liability to directors and shareholders of

7   corporations that have complied with § 281(a) or (b)").

### B.   Plaintiff Lacks Standing to Assert Any Thinly Disguised Direct Breach of Fiduciary Duty Claim Against the Director Defendants

10        Plaintiff's original complaint mouthed the words "derivative claim" while actually

11   pleading a direct breach of fiduciary duty claim for the benefit of Super Lighting alone.

12   Plaintiff's original complaint made clear that the harm alleged is against Super Lighting, not

13   Lunera – and even asked for relief solely for the benefit of Super Lighting.  Complaint ¶¶ 225,

14   226.  After the Director Defendants' motion to dismiss highlighted this dispositive failure (at

15   pp.10-11), the FAC cosmetically plasters over it by substituting "Lunera" for "Super Lighting"

16   in some places, but the improper gravamen remains the same.

17        The Lunera Director Defendants never owed any direct fiduciary duty to Plaintiff.

18   Plaintiff Super Lighting is a Chinese supplier of lighting materials to Lunera pursuant to

19   contracts.  None of those contracts gave rise to any fiduciary duty owed to Super Lighting – by

20   Lunera or its individual directors.  Nor was Plaintiff a shareholder of Lunera.  No Delaware

21   statute provides that directors owe any direct fiduciary duty to creditors.  To the contrary,

22   pursuant to Delaware law, Plaintiff, who was only ever a creditor of Lunera, was never owed any

23   direct fiduciary duty by Lunera's directors, the Director Defendants.  *Quadrant*, 102 A.3d at 176,

24   *citing Gheewalla*, 930 A.2d at 103 ("*Gheewalla* holds that directors never owe fiduciary duties

25   directly to creditors").

26        Plaintiff continues to make allegations regarding harm alleged against Super Lighting,

27   not Lunera.  For just some examples, *see* FAC ¶ 78 (the Director Defendants' elected to dimmish

28   Lunera's value…for the intended purpose of putting those assets <u>beyond Super Lighting's reach</u>

to impede its ability to enforce its arbitration award"), ¶ 115 ("The Director Defendants knew that the inventory, Patents, and IoT Assets should be available and reserved for the creditors, including satisfaction of Super Lighting's claims"), ¶ 119 ("Director Defendants … willfully acted to make sure that 'someone else' was not Super Lighting"), ¶ 125 ("Director Defendants failed to … maximize the value of the inventory for the benefit of Lunera's residual claimants, including Super Lighting…"), ¶ 137(c) ("the inventory could and should be reserved and made available for the satisfaction of Super Lighting's claim"), ¶ 161 ("failed to…maximize the value [] for the benefit of Lunera's residual claimants, including Super Lighting as its largest creditor and residual beneficiary"), ¶¶ 140, 175 ("The Director Defendants' above described conduct injured Super Lighting because it diminished Lunera's value and eliminated all remaining assets otherwise available to satisfy Super Lighting's claim") (emphasis added).  Consequently, Plaintiff's Third Cause of Action continues to be directed at purported breaches of fiduciary duty against Plaintiff Super Lighting – rather than against Lunera – and it must be judged as the thinly disguised direct claim that it is and must be dismissed for lack of standing.

### C.  Plaintiff Fails to State a Claim for Breach of Fiduciary Duty Against the Director Defendants

Plaintiff has failed to plead any particular wrongdoing on the part of any individual Director Defendant, let alone with the requisite particularity required by F.R.C.P. 9(b) where, as here, the claims sound in fraud.  Super Lighting fails to make any allegation about any action taken by directors Coglizer, Creer, Rock, or McArthur other than attending a board meeting.  It only mentions Greenberg once - as sending an email about not pandering to Super Lighting.  *Id.* ¶ 80.  It only mentions Westly as heavily involved in Lunera decisions (unsurprising for a director), as part of Lunera's largest shareholders (meaning that he lost the most when Lunera dissolved), as affirmatively reaching out and repeatedly warning Super Lighting in meetings and in writing about imminent liquidation if it rejected every potential deal (giving it advance notice of exactly what happened), signing financing documents (as part of his job), and signing the documents for Lunera's statutory dissolution – none of which breaches any fiduciary duty or shows any fraud.  *Id.* ¶¶ 64, 69.  Plaintiff's allegations regarding Bruggeman's acts do not show fraud or wrongdoing and instead demonstrate that he performed his director and CEO roles

properly.  *Id.* ¶¶ 44-46, 48-54, 57, 63-64, 69, 82, 84, 89, 93-94, 97-99, 102-109, 112, 119, 121, 123-127, 129-134, 136, 152, 155, 161, 164-166, 168. (Bruggeman kept Plaintiff updated about Lunera's business status, updated Plaintiff regarding every potential deal, warned Plaintiff about the risk of Lunera shutting down and liquidation, offered Lunera assets to Plaintiff first, sought and followed legal advice, negotiated the sale of Lunera's assets to "maximize the value of assets and return payment to creditors" after Plaintiff rejected all deals, provided balanced distribution of assets to creditors and gave no special consideration to any creditor, identified all existing assets for Plaintiff's attachment, and testified truthfully in post-judgment proceedings). Plaintiff's FAC should be dismissed as to each Director Defendant for failure to state a claim.

### D.  Plaintiff Failed to Make Demand or Plead Demand Excusal

"For a plaintiff obtain the right to compel the corporation to sue, the plaintiff must establish demand futility or demand refusal as a matter of substantive Delaware law." *Accord Ainscow v. Sanitary Co. of Am.,* 180 A. 614, 615 (Del.Ch.1935) (Wolcott, C.) (citing *Sohland v. Baker,* 141 A. 277, 281–82 (Del.1927))." *Quadrant*, 102 A.3d at 181-182.  Plaintiff did neither. Super Lighting rejected the potential deal with Elite in November 2018 and obtained judgment June 12, 2019.  Plaintiff alleges that each individual director was a director "at all applicable times," but made no demand on them prior to dissolution/resignation, nor did it make any demand on Steve Westly, who remained and signed the Certificate of Dissolution, prior to filing the complaint in November 2021.  Nor does Plaintiff plead any specific facts showing that demand was futile as to any individual director – indeed Plaintiff doesn't even mention most of the directors and says nothing about Steve Westly other than that he was very involved, met with and warned Plaintiff about the pending liquidation, and signed the Certificate of Dissolution.  *Id.* ¶ 64 n.1. Instead, the only futility allegations are a generic statement that the directors face a "likelihood of liability" and a claim that all the directors resigned.  *Id.* ¶¶ 208, 205.

### E.  The Director Defendants Are Protected By The Business Judgment Rule

The Director Defendants' actions in selling Lunera's assets to third parties (rather than "saving" them for Super Lighting) are protected by the business judgment rule.  Even the FAC concedes that the Director Defendants here proceeded in a careful and well-reasoned manner.

They sought legal advice and followed it.  FAC ¶¶ 45-47. They explored available options (to which Super Lighting refused to consent because it wanted more).  *Id.* ¶¶ 57-68.   They warned Super Lighting in November 2018 that its continual refusal to consent to every proposed transaction would lead to Lunera's assets having "to be liquidated at extremely low prices" and "Lunera's Board will have to move forward with shutting down the Company's operations and liquidate its assets."  *Id.* ¶¶ 64, 66.  Then, after Super Lighting refused to consent to every available potential deal, the Director Defendants reasonably proceeded to sell Lunera's assets to third party purchasers and make pro rata distributions of the proceeds to Lunera's residual beneficiaries.  Super Lighting's complaint is that Lunera did so before Super Lighting was able to finalize its efforts to obtain a judgment against Lunera and jump to the head of the line of creditors.  *Id.* ¶ 55.  In reality, the Director Defendants acted carefully and reasonably – and Super Lighting's complaint that Lunera should have somehow continued the business and held onto all the assets from November 2018 (when Super Lighting refused to agree to any transaction and was warned that liquidation would be the only alternative) until June 2019 (when Super Lighting obtained a judgment) is not reasonable or in line with Delaware law.

To determine whether directors have made a decision that breached their fiduciary duty, Delaware law requires an examination of their actions through the lens of a standard of review. *Quadrant,* 102 A.3d at 182.  Delaware's default standard of review is the business judgment rule, a principle of nonreview that "reflects and promotes the role of the board of directors as the proper body to manage the business and affairs of the corporation." *In re Trados Inc. S'holder Litig. (Trados I),* 2009 WL 2225958, at *6 (Del.Ch. July 24, 2009).  The rule presumes that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Aronson,* 473 A.2d at 812.  Unless one of its elements is rebutted, "the court merely looks to see whether the business decision made was rational in the sense of being one logical approach to advancing the corporation's objectives." *In re Dollar Thrifty S'holder Litig.,* 14 A.3d at 598. "Only when a decision lacks any rationally conceivable basis will a court infer bad faith and a breach of duty." *In re Orchard Enters., Inc. S'holder Litig.,* 88 A.3d at 34.

1    Here, instead of rebutting the elements of the business judgment rule, the allegations of

2    the FAC actually demonstrate that the Director Defendants acted prudently, pursuant to advice

3    from legal counsel and after Super Lighting repeatedly refused to consent to any potential

4    transaction, to wind down the business and sell Lunera's assets to independent third parties and

5    distribute the proceeds rather than to wait for an additional six months (during which the

6    business was shut down) so that Super Lighting could potentially finish an arbitration and obtain

7    a judgment that would give it some priority over other residual beneficiaries.  As Delaware law

8    recognizes, "the efficient liquidation of an insolvent firm might well be the method by which the

9    firm's value is enhanced in order to meet the legitimate claims of its creditors.  *Production*

10   *Resources,* 863 A.2d at 791 n. 60.  Here too the business judgment rule would protect a board's

11   decision to pursue an efficient liquidation." *Quadrant,* 102 A.3d at 186.  Such a decision to

12   pursue liquidation on a reasonable timeframe cannot be said to "lack any rationally conceivable

13   basis," and this claim should be dismissed pursuant to the business judgment rule.  *In re Orchard*

14   *Enters., Inc. S'holder Litig.,* 88 A.3d at 34.

15   Lunera's status is irrelevant to the application of the business judgment rule.  "[T]he

16   business judgment rule protects the directors of solvent, barely solvent, and insolvent

17   corporations, and . . . creditors of an insolvent firm have no greater right to challenge a

18   disinterested, good faith business decision than the stockholders of a solvent firm." *Trenwick,*

19   906 A.2d at 195.

20   **F.  The Director Defendants Did Not Breach Their Fiduciary Duties**

21   Plaintiff's inability to state a claim for breach of fiduciary duty stems from the realities

22   that (1) the Director Defendants owed fiduciary duties to <u>all</u> the residual beneficiaries of Lunera,

23   not to just Super Lighting, and (2) the Director Defendants did nothing wrong.  *Quadrant*, 102

24   A.3d at 176. Their fiduciary duties directly conflicted with Super Lighting's self-interested

25   attempts to prioritize its own claims over those of all other residual beneficiaries and seize

26   Lunera's assets solely for itself.  Super Lighting's grievance is that Lunera did not cooperate

27   with Super Lighting's plan to set things up so that Lunera's assets were reserved to pay Super

28   Lighting first and most fulsomely in a zero sum situation.  FAC ¶¶ 67, 68, 118, 125.  Instead,

after Super Lighting killed every potential deal (including Elite) the Director Defendants directed the sale of Lunera's assets and the pro rata distribution of the proceeds amongst Lunera's residual beneficiaries – and Plaintiff sued them for purportedly not prioritizing Plaintiff.  This is not a cognizable claim.  *Shandler v. DLJ Merchant Banking, Inc.,* 2010 WL 2929654, at *14 (Del.Ch. July 26, 2010) (A plaintiff "cannot base his fiduciary duty claim on the premise that the board did not do what was best for a particular class of [the corporation's] creditors.").  Nor can Super Lighting hold the Director Defendants liable for failing to close the Elite transaction that Super Lighting expressly torpedoed by refusing to consent to it.

### G.  Lunera's Exculpation Clause Eliminates Duty of Care Claims

Beyond the business judgment rule, the Director Defendants are protected from monetary damages by the exculpation provisions of Lunera's certificate of incorporation pursuant to Section 102(b)(7) of the Delaware Corporations Code.[6]  "In a transaction governed by the business judgment rule, the plaintiff has the burden at the pleadings stage to allege facts sufficient to rebut the presumptions of loyalty and good faith that protect the directors.  Absent well pled facts supporting a breach of the duty of loyalty, a court can apply Section 102(b)(7) summarily at the pleadings stage.  *Malpiede v. Townson,* 780 A.2d 1075, 1094–96 (Del. 2001); *see Emerald P'rs v. Berlin (Emerald II),* 787 A.2d 85, 90 (Del. 2001) (describing *Malpiede* as addressing the proper application of a Section 102(b)(7) provision 'in a pretrial procedural context, when the applicable standard of judicial review was the business judgment rule'"). *Quadrant,* 102 A.3d at 194.  Consequently, all of the allegations that the Director Defendants breached their duty of care must be dismissed pursuant to Lunera's exculpation clause.

### H.  The Director Defendants Have No Duty of Loyalty to Plaintiff

The Director Defendants owe a duty of loyalty to Lunera and all of its residual beneficiaries, not to Super Lighting.  The Director Defendants owe no fiduciary duty directly to Super Lighting.  *Supra* at 9-10, 12-13.  There are no allegations that the Defendant Directors were interested in the sales of Lunera's assets or that there was any sort of self-dealing or that they subordinated Lunera's interests to their own.  Instead, all Plaintiff alleges is that the

---

[6] A true and correct copy of Lunera's Certificate of Incorporation is attached to Lunera's RJN as Exhibit 2.

Director Defendants did not put Super Lighting's interests ahead of the rest of the residual beneficiaries – which they had no duty to do.  Consequently, the Director Defendants' adherence to their duty of loyalty is not in question, and claims against them should be dismissed.

## I. Plaintiff Fails to State a Claim for Fraudulent Transfer of Patents Against the Director Defendants

Plaintiff's "fraudulent transfer" claims are inaccurate sour grapes reactions by Super Lighting because Lunera sold its assets in liquidation six months before Super Lighting's plan to seize them for itself came to completion.  There are none of the requisite indicia that the Director Defendants aimed the third-party sales at frustrating Plaintiff.  Nor are any of the allegations against any individual Defendant Director pled with the specificity required by F.R.C.P. 9(b) where, as here, the FAC alleges actual fraud (and asks for punitive damages).  Instead, at best, Plaintiff's complaint is that Lunera didn't get the best possible price for its assets – but provides no facts showing any alternatives except Super Lighting taking everything for itself at the expense of other residual beneficiaries.  Selling assets to third parties in a business shutdown liquidation where there are no alternatives is simply not actionable.

Plaintiff's claims that the Director Defendants fraudulently transferred patent assets are internally contradictory and fail to properly allege the requisite elements.[7]  The crux of Super Lighting's "fraudulent transfer" allegation is the ipse dixit argument that the sale of Lunera's questionable patent portfolio to third party Tynax on January 18, 2019 (after Super Lighting had been warned in November 2018 that Lunera would have to liquidate because Super Lighting blocked every potential deal to continue the business) was somehow surprising or "fraudulent." Contrary to Super Lighting's FAC, the Director Defendants had no obligation (or ability) to maintain Lunera's business (which was failing precisely because of Super Lighting's antagonistic actions in raising prices on Lunera, refusing to supply Lunera with products, suing Lunera, and refusing to consent to every potential acquisition of Lunera) or preserve all of Lunera's assets in stasis until Super Lighting obtained a judgment on June 12, 2019 just so Super Lighting could jump the line of Lunera creditors and collect more than its pro rata share of the

---

[7] Lunera was a Delaware corporation and the laws of Delaware apply to any action brought against it.  However, the same result would be reached under the laws of California.

1  residual value of Lunera.

2         In order to plead a violation of 6 Del. C. § 1304(a)(1), Plaintiff must properly allege that

3  the Director Defendants made the transfer "with actual intent to hinder, delay or defraud" Super

4  Lighting.  It is not enough that the sale of patents actually has the effect of hindering or delaying

5  Super Lighting – instead the Director Defendants must have intended to do so.  Pursuant to 6

6  Del. C. § 1304(b), the factors to consider regarding whether there was actual intent on the part of

7  the Director Defendants include the following factors that Plaintiff failed to plead (likely because

8  they did not apply): Was the sale to an insider? Did Lunera retain possession or control of the

9  patents? Did Lunera abscond? Did the sale occur shortly before or after a substantial debt was

10  incurred? Did Lunera sell the patents to a lienor who transferred the patents to a Lunera insider?

11  The answer to each of these is "No."

12         Similarly, Super Lighting's pleadings self-contradict on other factors.  For example, "was

13  the sale disclosed or concealed?"  Super Lighting claims it was concealed, but alleges that as

14  early as November 2018, Super Lighting was told that continued refusal to consent to potential

15  transactions would lead to liquidation.  FAC ¶¶ 64, 66.  Another example is "was the value of the

16  consideration received reasonably equivalent to the value of the patents?"  Super Lighting's FAC

17  omits any estimate of the value of the patents (conspicuously dropping the Complaint's claim

18  that the patents were worth so much that Lunera wasn't insolvent).  Setting that aside, Super

19  Lighting also alleged that Tynax (the third party who bought the patents) resold them for a

20  substantially similar price – especially after transactional costs.  *Id.* ¶ 167.

21         Aside from rote repetition of the allegation, Plaintiff does not make the requisite specific

22  factual allegations that the Director Defendants had any actual intent to hinder, delay or defraud

23  Super Lighting.  Nor do the factors of 6 Del. C. § 1304(b) demonstrate such actual intent.  In

24  reality, the patent sale to a third party for reasonably equivalent value was a forewarned and

25  foreseeable part of the shut down and liquidation of Lunera that became inevitable after Super

26  Lighting blocked every potential transaction that might have kept Lunera operating.  FAC ¶¶ 64,

27  66.  Indeed, the FAC concedes that Defendant Bruggeman repeatedly testified that Lunera's sale

28  of assets (patents and inventory) was not decided on the basis of Super Lighting having a lien or

not. *Id.* ¶¶ 97, 98.  Instead, he testified that he wanted to maximize the value of the assets sold and return payment to creditors.  He further testified that the goal was sell Lunera's assets without any intent to hinder, delay or defraud any creditor ("with no consideration of any party").  Complaint ¶ 91.

Pursuant to 6 Del. C. § 1305(a), "a transfer made or obligation incurred by a debtor is fraudulent as to a creditor…if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer."  The patent sale to third party Tynax did result in reasonably equivalent value, and does not qualify as a fraudulent transfer and Super Lighting pleads no facts to the contrary.

### J.   Plaintiff Fails to State a Claim for Fraudulent Transfer of Inventory Against the Director Defendants

Similarly, Plaintiff's claims that the Director Defendants fraudulently transferred inventory assets are internally contradictory and fail to properly allege the requisite elements or provide the required specific facts as to each individual director.  Like the sale of patent assets, the sale of Lunera's inventory to third parties was part of a business liquidation process that was forewarned in writing to Super Lighting in November 2018.  FAC ¶¶ 64, 66.  Super Lighting attempts to manipulate the timeline in order to create an unfounded impression of wrongdoing, but the simple facts are that Lunera sold much of its inventory (allegedly 235,000 unspecified units) in early January before any Attachment Order issued[8] and provided accurate information regarding the rest of its inventory per the Attachment Order.  *Id.* ¶¶ 105-107.

The same pleading requirements of 6 Del. C. § 1304(a)(1) and § 1305(a) apply to the allegations regarding Lunera's inventory sales being "fraudulent transfers."  And, as with the patent sale allegations, Super Lighting's allegations regarding the inventory sales fall short of pleading the requisite specific facts showing that each individual Director Defendant made any fraudulent transfer or possessed any actual intent to hinder, defraud of delay Super Lighting.  As above, the answer to the questions: Was the sale of inventory to an insider?; Did Lunera retain

---

[8] An email that "a decision" had occurred is not a notice that an Attachment Notice was granted.

possession or control of the inventory?; Did Lunera abscond?; Did the sales occur shortly before or after a substantial debt was incurred?; and Did Lunera sell the inventory to a lienor who transferred the inventory to a Lunera insider? are each "No."  Likewise, Super Lighting fails to plead specific facts that show that Lunera's inventory was not sold for reasonably equivalent value when it was sold in multiple sales to different third parties for roughly $75,000.  FAC ¶¶ 131, 133, 134.  Super Lighting admits that it did not have a contemporaneous fair market valuation, but claims that Lunera's inventory was worth $1.6 million – based not on an analysis of the inventory Lunera sold, but instead based on the speculated "unit cost and pricing" of "standard LED products."  *Id.* ¶ 124.

Similarly, Super Lighting takes issue with the unit price for some of Lunera's inventory sales, but refers to historic prices of inventory sold to Lunera, which varied by more than 25x.  FAC ¶ 131.  Given that Super Lighting was Lunera's prime supplier, there is no reason for not providing actual values.  Indeed, one of the reasons Super Lighting gave for its refusal to consent to an Elite transaction was an unwanted contingency that Lunera's inventory be sold at a certain price that was below the amount Lunera had valued it at.  *Id.* ¶¶ 46, 68.  It is hypocritical for Super Lighting to now be attempting to use Lunera's book value of inventory to attempt to undermine the adequacy of amounts realized in actual third-party sales.

Aside from rote repetition of the accusation itself, Plaintiff does not make the requisite specific allegations that the Director Defendants had any actual intent to hinder, delay or defraud Super Lighting.  Nor do the factors of 6 Del. C. § 1304(b) demonstrate such actual intent.  In reality, the inventory sales to third parties for reasonably equivalent value were a warned of and foreseeable part of the liquidation of Lunera that became inevitable after Super Lighting blocked every potential transaction that might have kept Lunera operating.  Indeed, the FAC concedes that Defendant Bruggeman repeatedly testified that Lunera's sale of assets (patents and inventory) was not decided on the basis of Super Lighting having a lien or not.  FAC ¶¶ 97, 98.  Instead, he testified that he wanted to maximize the value of the assets sold and return payment to creditors.  He further testified that the goal was sell Lunera's assets without any intent to hinder, delay or defraud any creditor ("with no consideration of any party").  Complaint ¶ 91.

And, as with the patent sale, no Director Defendant or other insider benefitted from these third party sales.  Instead, like all other shareholders, they lost everything they invested in Lunera.

## V.      CONCLUSION

For the foregoing reasons, the Court should dismiss Causes of Action One, Two and Three against the Director Defendants in their entirety.

Dated: March 8, 2022                                        KAUFHOLD GASKIN GALLAGHER LLP

By: /s/ Jonathan Gaskin
                                                   Steven Kaufhold
                                                   Jonathan Gaskin
                                                   Attorneys for the Director Defendants