IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD., <br><br>Plaintiff, <br><br>v. <br><br>JOHN BRUGGEMAN, et al., <br><br>Defendants. | Case No. 21-cv-08489-MMC <br><br>**ORDER GRANTING IN PART AND DENYING IN PART DIRECTOR DEFENDANTS' MOTION TO DISMISS FIRST AMENDED VERIFIED COMPLAINT; AFFORDING PLAINTIFF LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |
|---|---|

Before the Court is defendants John Bruggeman ("Bruggeman"), Steve Westly ("Westly"), Frank Creer ("Creer"), Dave Coglizer ("Coglizer"), Susan McArthur ("McArthur"), Alan Greenberg ("Greenberg"), and Richard Rock's ("Rock") (collectively, "Director Defendants") "Motion to Dismiss First Amended Derivative Complaint," filed March 8, 2022. Plaintiff Jiaxing Super Lighting Electric Appliance Co., Ltd. ("Super Lighting") has filed opposition, to which the Director Defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND[2]

Plaintiff Super Lighting is a "lighting manufacturer" that "specializes in researching, designing, manufacturing, and marketing lighting solutions." (See FAC ¶ 4.) In 2016, Super Lighting "entered into a Purchase and Development Agreement" (hereinafter,

---

[1] By order filed May 24, 2022, the Court took the matter under submission.

[2] The following facts are taken from the allegations of the operative complaint, the "First Amended Verified Complaint" ("FAC").

"Purchase Agreement") to become the "largest supplier of traditional LED lighting products" for nominal defendant Lunera Lighting, Inc. ("Lunera") (see FAC ¶ 27), a now-dissolved lighting products distributor that "purchased products from manufacturers such as Super Lighting, branded them, and resold them to retail lighting distributors" (see FAC ¶ 5). At all relevant times, Lunera's board of directors was comprised entirely of the Director Defendants, namely, Bruggeman, Westly, Creer, Coglizer, McArthur, Greenberg, and Rock. (See FAC ¶ 205.)

From as early as December 31, 2017, Lunera was insolvent (see FAC ¶ 199) and, by February 2018, Lunera had stopped paying for products delivered by Super Lighting and owed it over $11 million in "past-due invoices" (see FAC ¶¶ 28-29). In light of Lunera's "represent[ations] that the problem was temporary and that it expected to receive additional funding to pay the delinquent amounts," however, Super Lighting agreed to put Lunera on a payment plan and "continued accepting new purchase orders" until Lunera defaulted in April 2018. (See FAC ¶¶ 30, 32.) In July 2018, Super Lighting terminated the Purchase Agreement (see FAC ¶ 34) and, shortly thereafter, filed a breach of contract action against Lunera, which went to arbitration (hereinafter, "Arbitration") (see FAC ¶¶ 40-41).

During the time the Arbitration was pending, the Director Defendants "evaluated proposals . . . for the . . . acquisition of Lunera," including an "initial" proposal from an entity called Elite Lighting ("Elite"). (See FAC ¶¶ 57, 59.) Any such acquisition, however, required approval from Super Lighting, which rejected every proposal on the basis that the terms were "unfavorable" to Super Lighting. (See FAC ¶¶ 57-62.) On November 3, 2018, Bruggeman sent Super Lighting a proposal for a $6.9 million acquisition by Elite and "threaten[ed] . . . that if [Super Lighting] did not accept the new term sheet, Lunera 'w[ould] end negotiations . . . and [its] assets would have to be liquidated at extremely low prices.'" (See FAC ¶ 64.) Super Lighting again rejected the proposal and "emailed a signed counter-proposal term sheet to Elite and Bruggeman" (see FAC ¶¶ 67, 69); in response, Bruggeman "terminated" the negotiations with Elite and "shut Super Lighting

out of . . . ongoing negotiations with other potential acquirers" (see FAC ¶¶ 71-73).

On November 29, 2018, Super Lighting, seeking "to attach a lien on Lunera's assets," filed an "Emergency Motion for a Writ of Attachment" (hereinafter, "Attachment Motion") in the Arbitration. (See FAC ¶¶ 83-84.) The arbitrator, on January 18, 2019, granted the Attachment Motion (see FAC ¶ 103), and, on May 14, 2019, "issued a final award in favor of Super Lighting" (see FAC ¶ 186).[3] On July 30, 2019, Lunera "officially dissolved." (See FAC ¶ 188.)

Thereafter, through post-judgment discovery (see FAC ¶ 187), Super Lighting learned that, in January 2019, "substantially all" of Lunera's inventory, through two transfers to defendant Advanced Trading LLC ("Advanced Trading")[4] and one transfer to third-party Outback Equipment Company ("Outback"), had been sold to defendant OEO Energy Solutions, LLC ("OEO") (see FAC ¶¶ 128-34),[5] and Lunera's 37 patents had been sold to defendant Tynax, Inc. ("Tynax")[6] (see FAC ¶¶ 161, 166-67). To date, Super Lighting's arbitration award "remains wholly unpaid." (See FAC ¶ 122.)

Based on the above allegations, Super Lighting asserts four causes of action, specifically, (1) "Actual and Constructive Fraudulent Transfer of Inventory," against the Director Defendants, OEO, Advanced Trading, Einarsen, and Butz, (2) "Actual and Constructive Fraudulent Transfer of Patents," against the Director Defendants, Tynax,

---

[3] On June 12, 2019, the United States District Court for the Northern District of California confirmed the arbitration award and entered judgment against Lunera. (See FAC ¶ 186.)

[4] Advanced Trading, which is principally managed by defendants John Einarsen ("Einarsen") and Lawrence Butz ("Butz") and shares the same "principal office address" as OEO (see FAC ¶ 128), was "organized and incorporated in Delaware . . . two weeks prior to the first transfer of Lunera's inventory" and "registered in Illinois the day before the second transfer" (see FAC ¶ 146 (emphasis omitted)).

[5] Although Bruggeman, at a deposition, "could not recall who purchased" the assets that were transferred through Outback, he had previously told Lunera's inventory custodian that "all of the . . . inventory" was being purchased by OEO. (See FAC ¶¶ 93, 134.)

[6] Tynax is a broker that "acquir[ed] the [p]atents on behalf of and at the request of" defendant Signify Holding B.V. ("Signify"). (See FAC ¶ 161.)

and Signify, (3) "Breach of Fiduciary Duties," against the Director Defendants,[7] and (4) "Alter Ego/Corporate Veil Piercing," against Advanced Trading, Einarsen, and Butz.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. See Hal Roach Studios, Inc. v. Richard Feiner & Co.,

---

[7] Super Lighting brings this claim "derivatively as a creditor on behalf of and for the benefit of Lunera." (See FAC ¶ 237.)

Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered.  See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).  In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint.  See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).  Finally, the Court may consider matters that are subject to judicial notice.  See Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

## DISCUSSION

In the instant motion, the Director Defendants seek dismissal of each of the claims asserted against them in Super Lighting's FAC.

### I.   § 281(c) Safe Harbor

At the outset, the Director Defendants contend they are protected from liability by § 281(c) of the Delaware General Corporation Law.  (See Mot. at 12:1-7.)

Section 281(c) provides, in relevant part, that "[d]irectors of a dissolved corporation or governing persons of a successor entity which has complied with [§ 281(b)] . . . shall not be personally liable to the claimants of the dissolved corporation."  See 8 Del. C. § 281(c).  To comply with § 281(b), a corporation must "adopt a plan of distribution pursuant to which the dissolved corporation . . . shall," inter alia, (1) "pay or make reasonable provision to pay all claims and obligations," and (2) "make such provision as will be reasonably likely to be sufficient to provide compensation for any claim against the corporation which is the subject of a pending action, suit or proceeding to which the corporation is a party."  See 8 Del. C. § 281(b)(i)-(ii); see also Gans v. MDR Liquidating Corp., CIV. A. No. 9630, 1990 WL 2851, at *8 (Del. C. Jan. 10, 1990) (noting § 281(b) provides a "detailed statutory procedure which, if followed, . . . create[s] a safe harbor for directors who use . . . [said] procedure[] to wind up a dissolved Delaware corporation" (internal quotation and citation omitted)).

Here, the Director Defendants, in support of the instant motion, submit a document titled "Plan of Complete Liquidation and Dissolution of Lunera Lighting, Inc.," which contains a provision labeled "Plan of Distribution" that essentially incorporates the language of § 281(b) in its entirety and includes a statement of Lunera's "inten[t] to deliver [its] assets to . . . Super Lighting," which, as Lunera therein acknowledges, "ha[d] been granted a writ of attachment" against said assets. (See Request for Judicial Notice ("RJN") Ex. 1 at ECF p.12.)[8]  In response, Super Lighting contends Lunera's plan of distribution does not protect the Director Defendants from liability because Lunera "could not possibly comply with its own directive."  (See Opp. at 17:6-8.)

In particular, Super Lighting alleges, Lunera, approximately six months before adopting its Plan of Distribution, had transferred "substantially all" of its assets to OEO and Tynax (see FAC ¶¶ 95, 119, 129-38, 166-67, 219), and Super Lighting's arbitration award "remains wholly unpaid" (see FAC ¶ 122).  Such allegations raise a "litigable" question as to whether the above-referenced Plan of Distribution was, under § 281(b), "reasonably likely to be sufficient to provide compensation" for Super Lighting's claim. See In re RegO Co., 623 A.2d 92, 97 (Del. Ch. 1992) (noting compliance with § 281(b)'s "reasonably likely to be sufficient" standard "will, in principle at least, always be litigable"); see also In re Transamerica Airlines, Inc., No. Civ.A. 1039-N, 2006 WL 587846, at *9, 9 n.37 (Del. Ch. Feb. 28, 2006) (finding allegations that directors "distributed [corporation's] assets . . . without adequately providing for the claims of [its] creditors" and "did not make a provision that would be reasonably likely to provide . . . for [plaintiff's] pending claim" sufficient to plead noncompliance with § 281(b); noting, "even if [the directors had] provide[d] for [plaintiff's] claim, compliance with § 281(b)'s standard, 'reasonably likely to be sufficient,' [would] still [be] litigable" (citation omitted)).

---

[8] The Director Defendants' undisputed request that the Court take judicial notice of said document is GRANTED.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (holding courts "may consider . . . documents incorporated by reference in the complaint . . . without converting [a] motion to dismiss into a motion for summary judgment").

The Court next turns to each of the causes of action in the order addressed in the motion to dismiss.

## II.  Breach of Fiduciary Duty (Third Cause of Action)

In the Third Cause of Action, Super Lighting alleges the Director Defendants breached their fiduciary duties to Lunera.[9]

The Director Defendants contend the Third Cause of Action is subject to dismissal for the following asserted reasons: (1) although purportedly derivative, the claim is actually a direct claim and, thus, cannot be brought by Super Lighting; (2) Super Lighting has neither made a demand on the Director Defendants nor adequately pleaded demand futility and excusal; (3) Super Lighting has not adequately pleaded a non-exculpated breach of fiduciary duty claim against any Director Defendant; and (4) the Director Defendants' actions are protected by the business judgment rule.

### A.  Whether Claim Is Direct or Derivative

"[I]ndividual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate directors."  N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 103 (Del. 2007) (emphasis omitted).  A creditor may, however, "protect [its] interest by bringing derivative claims on behalf of the insolvent corporation or any other direct nonfiduciary claim[] . . . that may be available for individual creditors."  See id.

The Director Defendants contend Super Lighting's breach of fiduciary claim is a "thinly disguised direct claim that . . . must be dismissed."  (See Mot. at 13:12-14.)  In analyzing whether a claim is direct or derivative, courts "look to the nature of the alleged wrong rather than the designation used by [the] plaintiff[]," see Rabkin v. Philip A. Hunt Chem. Corp., 547 A.2d 963, 968 (Del. Ch. 1986), and such determination "must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or

---

[9] As noted, Super Lighting asserts its Third Cause of Action "derivatively as a creditor on behalf of and for the benefit of Lunera."  (See FAC ¶ 237.)

the suing [creditors], individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the [creditors], individually)," see Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1033 (Del. 2004) (emphasis omitted).

Here, Super Lighting alleges the Director Defendants breached their fiduciary duties to Lunera by, inter alia, "refus[ing] to negotiate" further as to the $6.9 million acquisition by Elite, as well as "causing" Lunera to fraudulently transfer its assets for inadequate compensation (see FAC ¶¶ 71, 252, 254), and, based on said allegations, seeks "compensatory damages in favor of Lunera" (see FAC at 59:4-6). Such claim is premised on "harm done to the corporation as an economic entity" with "any recovery logically flow[ing] to the corporation and benefit[ing]" its creditors "indirectly to the extent of their claim on the firm's assets," and, consequently, is properly characterized as derivative. See Prod. Res. Grp., L.L.C. v. NCT Grp., Inc., 863 A.2d 772, 792, 800 (Del. Ch. 2004) (finding creditor's breach of fiduciary claim derivative where "improper transfer" of assets caused loss of "economic value" that would have been "otherwise available to all creditors"; noting, "in the case of an insolvent firm, poor decisions by directors that lead to a loss of corporate assets . . . remain harms to the corporate entity itself").

### B.   Demand Futility & Excusal

To bring a derivative claim on behalf of a corporation, a plaintiff must either (1) "ma[k]e a demand on the corporation to institute such an action," or (2) "demonstrate[] that demand would be futile" and is therefore "excuse[d]." See Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 730-31 (Del. 1988).

Here, there is no dispute that Super Lighting has not made a demand upon the Director Defendants, who, as noted, comprised Lunera's entire board of directors at all relevant times; rather, Super Lighting alleges such a demand is futile because Super Lighting did not "discover[] relevant facts sufficient to put it on notice" as to its breach of fiduciary duty claim until after Lunera had "already dissolved and . . . had no management or directors upon which a demand could be made." (See FAC ¶¶ 205-07.) Given such circumstances, the Court agrees that a pre-suit demand would have been

futile and is therefore excused.  See United Food & Com. Workers Union v. Zuckerberg, 250 A.3d 862, 877 (Del. Ch. 2020) (holding "demand futility analysis" looks to "board of directors as constituted when the lawsuit was filed"); Pemberton ex rel. Patterson Cos. v. Anderson, 412 F. Supp. 3d 1058,1063-64 (D. Minn. 2019) (noting case involving "essentially defunct" entity would be "an example of a situation in which demand may well be futile"); Dillon v. Lee, 81 N.W. 245, 247 (Iowa 1899) (finding "right to bring suit to enforce [corporation's] claims" belonged "to the corporation[] . . . until [it] . . . dissolved").[10]

### C. Whether Super Lighting Has Adequately Pleaded a Non-Exculpated Breach of Fiduciary Duty Claim

To state a claim for breach of fiduciary duty, a plaintiff must allege "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, and (3) knowing participation in that breach by [the defendant]."  See Rabkin, 547 A.2d at 968 (internal quotation and citation omitted).  "Directors of a Delaware corporation owe two fiduciary duties—care and loyalty."  Quadrant Structure Prods. Co. v. Vertin (hereinafter, "Quadrant II"), 115 A.3d 535, 549 (Del. Ch. 2015).  A director breaches his duty of care by acting with "gross negligence."  See McMullin v. Beran, 765 A.2d 910, 921 (Del. 2000) (internal quotation and citation omitted).  A director breaches his duty of loyalty by "fail[ing] to pursue the best interests of the corporation and its stockholders and therefore fail[ing] to act in good faith."  See Quadrant II, 115 A.3d at 549, 551 (internal quotation and citation omitted) (noting good faith "is a subsidiary element, i.e., a condition, of the fundamental duty of loyalty" (internal quotation and citation omitted)).  Where, as here,

---

[10] Indeed, the Director Defendants have cited no authority holding a plaintiff must make a demand on a board of directors that no longer exists.  Moreover, as Super Lighting points out, where, as here, a dissolved corporation has no board of directors, "there is no . . . risk of usurping the board's authority and prerogative to decide how to handle an asset of the company such as a corporate claim, both of which the doctrine of demand is specifically designed to protect." (See Opp. at 18-23); see also Quadrant Structured Prods. Co. v. Vertin (hereinafter, "Quadrant I"), 102 A.3d 155, 182 (Del. Ch. 2014) (noting purpose of demand is to "protect the board's authority" and "prevent a derivative plaintiff from usurping the board's prerogative to decide how to handle a corporate claim"); Kaplan, 540 A.2d at 730 (noting purpose of pre-suit demand requirement recognizes "directors' power to manage the affairs of the corporation").

9

the corporation is insolvent, directors "continue to owe fiduciary duties for the benefit of all its residual claimants, a category which now includes creditors." See id. at 546-47.

As an initial matter, the Director Defendants contend "all allegations that [they] breached their duty of care must be dismissed pursuant to" an exculpatory clause in Lunera's Certificate of Incorporation. (See Mot. at 17:20-21; see also RJN Ex. 2 at ECF p. 26.)[11]

Under § 102(b)(7) of the Delaware General Corporation Law, "a corporation can exculpate its directors from monetary liability for a breach of the duty of care." See In re Walt Disney Derivative Litig., 906 A.2d 27, 65 (Del. 2006). Such an exculpatory clause cannot, however, "eliminate or limit the liability of a director . . . for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law." See 8 Del. C. § 102(b)(7).

"A failure to act in good faith may be shown[] . . . where [a] fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation," In re Walt Disney, 906 A.2d at 67 (internal quotation and citation omitted), and, as one court has observed, "any human emotion may cause a director to place his own interests, preferences or appetites before the welfare of the corporation," see Chen v. Howard-Anderson, 87 A.3d 648, 684 (Del. Ch. 2014) (internal quotation and citation omitted) (noting "[a] range of human motivations," including "greed . . . , hatred, lust, envy, revenge, shame, or pride," can "inspire fiduciaries and their advisers to be less than faithful in their contextual duty to pursue the best value for [an insolvent] company's [creditors]" (internal quotation, citation, and alteration omitted)).

Here, Super Lighting argues it has sufficiently pleaded a non-exculpated breach of fiduciary duty by alleging facts showing the Director Defendants "engaged in bad faith,"

---

[11] The Director Defendant's undisputed request that the Court take judicial notice of Lunera's Certificate of Incorporation is GRANTED. See Ritchie, 342 F.3d at 908 (holding courts "may consider . . . documents incorporated by reference in the complaint . . . without converting [a] motion to dismiss into a motion for summary judgment").

specifically, (1) "in connection with the proposed Elite acquisition," and (2) in "caus[ing] Lunera to make . . . fraudulent transfers" of its assets. (See Opp. at 21:15-19, 22:7-14; see also FAC ¶ 251.) The Court addresses each such basis in turn.

### 1. Elite Transaction

The Court finds Super Lighting has sufficiently alleged that Greenberg, Bruggeman, and Westly acted in bad faith in connection with the Elite transaction. In particular, Super Lighting alleges that (1) after Super Lighting rejected initial proposals from Elite and other "potential acquirers of Lunera," Greenberg told the other Director Defendants to "walk away from" Super Lighting and "[l]et them spend money to come after us," and that Super Lighting "will realize when they push us too far" (see FAC ¶¶ 59, 71, 80 (alteration and emphasis omitted)); (2) Bruggeman and Westly "threaten[ed] . . . that if [Super Lighting] did not accept the new term sheet" for the $6.9 million acquisition by Elite, "Lunera w[ould] end negotiations" and "liquidate[]" its assets "at extremely low prices" (see FAC ¶ 64 (internal quotation omitted)); and (3) when Super Lighting responded with a counterproposal, Bruggeman "refused to negotiate" or provide a "substantive response" and instead "shut Super Lighting out of further and ongoing negotiations with other potential acquirers" (see FAC ¶¶ 69-71). Such allegations, construed in the light most favorable to Super Lighting, see NL Indus., 792 F.2d at 898, suffice to support a reasonable inference that Greenberg, Bruggeman, and Westly acted with a purpose of "retaliat[ing] against Super Lighting for its refusal to agree to" their acquisition proposals (see FAC ¶ 70) rather than a purpose of "advancing the best interests of [Lunera] and its [creditors]," see In re Walt Disney, 906 A.2d at 67 (internal quotation and citation omitted).

As to the remaining Director Defendants, namely, McArthur, Creer, Coglizer, and Rock, however, Super Lighting has not sufficiently alleged their "knowing participation" in bad faith conduct. See Rabkin, 547 A.2d at 968. Rather, Super Lighting merely alleges said defendants attended a board meeting during which they were advised of their fiduciary duties and acquisition proposals were discussed. (See FAC ¶¶ 51, 59); see

also Rabkin, 547 A.2d at 968 (dismissing breach of fiduciary claim where complaint lacked allegations of particular defendant's "knowing participation" in wrongful conduct); In re Emerging Comm'ns, Inc. S'holders Litig., No. Civ.A. 16415, 2004 WL 1305745, at *38 (Del. Ch. May 3, 2004) (noting liability for breach of fiduciary duty "must be determined on an individual basis").[12]

## 2. Fraudulent Transfer of Lunera's Assets

The Court finds Super Lighting has sufficiently alleged that Bruggeman and Westly acted in bad faith in connection with the alleged fraudulent transfer of Lunera's assets. In particular, with respect to the transfer of Lunera's inventory, Super Lighting alleges that (1) Bruggeman and Westly received an email from Lunera's "outside counsel," Craig Tighe ("Tighe"), wherein Tighe suggested a "potential private foreclosure sale . . . 'as a possible way to make it more difficult for Super Lighting . . . to enforce its arbitration award'" (see FAC ¶ 74 (emphasis omitted));[13] (2) a few days later, Bruggeman suggested, to Einarson and Butz at OEO, a "private foreclosure sale of [Lunera's] assets" (see FAC ¶ 152); (3) despite receiving "confirm[ation]" from OEO that the "current book valuation of Lunera's inventory" was approximately $2 million (see FAC ¶ 156), Bruggeman negotiated a sale of the inventory to OEO for only $75,000 (see FAC ¶¶ 129-34);[14] (4) before such sale, both Westly and Bruggeman had "threaten[ed]" to have the assets "liquidated at extremely low prices" (see FAC ¶ 64); and (5) Einarsen and Butz "wanted [Director Defendant] Westly to indemnify [OEO] against any legal fees OEO

---

[12] Although Super Lighting alleges "the Director Defendants" refused to continue negotiating with Super Lighting (see FAC ¶ 71), there are no allegations from which the Court can reasonably infer that McArthur, Creer, Coglizer, or Rock actually participated in that decision.

[13] Although Super Lighting alleges McArthur also received Tighe's above-referenced email suggesting a private foreclosure sale (see FAC ¶ 74), there is nothing in the FAC to indicate McArthur agreed or acted in accordance with that suggestion.

[14] As noted, Super Lighting alleges the inventory was transferred to OEO through Advanced Trading and Outback, the former having been "set up as a sham corporation to . . . conceal the inventory transfers from Super Lighting." (See FAC ¶ 135.)

incur[red] in any legal action that Super Lighting might bring against them" for fraudulent conveyance (see FAC ¶¶ 151-53 (alterations in original)).

With respect to the transfer of Lunera's patents, Super Lighting alleges that (1) Bruggeman negotiated the sale of the patents to Tynax before he was "authorized" to do so (see FAC ¶ 168); (2) said negotiations consisted of a single telephone conversation with Tynax, during which Bruggeman stated "he would sell the [p]atents to Tynax 'if [it] came up with a better price' than $100,000 and 'if [they] could close the transaction quickly'" (see FAC ¶ 165); (3) in response, Tynax offered to buy the patents for $125,000, to which "Bruggeman immediately agreed" (see id.); (4) Tynax's chairman, David Smith ("Smith"), told Signify he had "[n]egotiated [the] deal and drafted an option and a patent purchase agreement in about 2 hours," that he had "never had such a crazy deadline for a patent sale before," and that $125,000 was "a real bargain considering the number of patents" (see FAC ¶¶ 169-70 (emphasis omitted));[15] (5) Smith told Tighe that Bruggeman "want[ed] to move at light speed" and that they were "going to try to break a world record for a transaction closing" (see FAC ¶ 169 (emphasis omitted)); (6) before such sale, both Westly and Bruggeman had "threaten[ed]" to have the assets "liquidated at extremely low prices" (see FAC ¶ 64); and (7) Bruggeman never "presented" the purchase offer "for evaluation and approval" by the other Director Defendants as he was "required to do" (see FAC ¶ 113).

As to the remaining Director Defendants, namely, Greenberg, McArthur, Creer, Coglizer, and Rock, however, Super Lighting's allegations do not suffice to support an inference that those individuals "knowing[ly] participat[ed]" in bad faith conduct. See Rabkin, 547 A.2d at 968. Although Super Lighting alleges "the Director Defendants approved" the transfers of Lunera's assets (see FAC ¶ 108 (internal quotation, alteration, and emphasis omitted)), there is no allegation that any particular Director Defendant

---

[15] As noted, Super Lighting alleges Tynax purchased the patents at Signify's request (see FAC ¶ 178) and transferred them to Signify on the same day that it entered into a transfer agreement with Lunera (see FAC ¶¶ 166-67).

13

voted in favor of said transfers or that any such vote had to be unanimous, see Rabkin, 547 A.2d at 968 (dismissing breach of fiduciary claim where complaint lacked allegations of particular defendant's "participation" in wrongful conduct); In re Emerging Comm'ns, 2004 WL 1305745, at *38 (noting "liability of . . . directors must be determined on an individual basis because the nature of their breach of duty (if any) . . . can vary for each director"), and Super Lighting has cited no authority holding that a director may be found liable for merely attending a meeting during which a transfer was approved.

Further, although Super Lighting alleges there was no "board meeting or discussion, . . . or any other informed steps taken[,] to . . . ensure the legitimacy of the sales process" or "to ascertain the reasonable or fair market value of the [p]atents and inventory" (see FAC ¶ 112), such allegations plead no more than an exculpated claim based on the duty of care, see In re Emerging Comm'ns, 2004 WL 1305745, at *43 (finding, where director "played no role in the negotiation," had "no reason to suspect that the price was unfair," and merely "cast his vote as a director in favor of the" transaction, plaintiff's allegations amounted, "at most," to an exculpated duty of care claim); Equity-League Pension Tr. Fund ex rel. Wayfair Inc. v. Great Hill Partners, L.P., C.A. No. 2020-0992-SG, 2021 WL 5492967, at *10 (Del. Ch. Nov. 23, 2021) (noting, absent "particular[]" allegations showing directors "consciously and intentionally disregarded their responsibilities," a "failure to become fully informed before making a decision" does not amount to bad faith (internal quotation and citation omitted)).

### D. Business Judgment Rule

Lastly, the Director Defendants contend Super Lighting's breach of fiduciary duty claim fails because their "actions in selling Lunera's assets to third parties . . . are protected by the business judgment rule." (See Mot. at 14:26-27.)

The business judgment rule "presumes that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." See In re Walt Disney, 906 A.2d at 52 (internal quotation and citation omitted). As Super Lighting points

out, however, such "presumption may be rebutted by pleading facts that show lack of good faith or the failure of due care." (See Opp. at 22:18-20); see also In re Walt Disney, 906 A.2d at 52 (noting business judgment rule is "rebutted if . . . plaintiff shows that the directors breached their fiduciary duty of care or of loyalty or acted in bad faith").

To the extent the Court, as set forth above, has found the FAC contains allegations sufficient to plead a plausible breach of fiduciary duty claim against any of the Director Defendants, such allegations also suffice to rebut the presumption provided by the business judgment rule.

### E. Conclusion: Breach of Fiduciary Duty

In sum, to the extent the Director Defendants seek dismissal of Super Lighting's Third Cause of Action, the motion will be granted except as to Greenberg, Bruggeman, and Westly.

### III. Actual & Constructive Fraudulent Transfer of Inventory (First Cause of Action) & Patents (Second Cause of Action)

In the First and Second Causes of Action, Super Lighting alleges the Director Defendants "approved, caused, facilitated, aided and abetted, caused, conspired to cause, and effectuated Lunera's actual and constructive fraudulent transfer" of, respectively, its inventory (see FAC ¶ 212) and its patents (see FAC ¶ 225), in violation of both the Delaware Uniform Fraudulent Transfer Act ("DUFTA") and the California Uniform Voidable Transaction Act ("CUVTA").[16]

"The elements to state a claim for fraudulent transfers under [DUFTA and CUVTA]

---

[16] Although there is some question as to whether a cause of action for aiding and abetting fraudulent transfers exists under DUFTA, the Court does not discuss the matter further herein, neither party having raised it in their respective filings. See, e.g., Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P., 906 A.2d 168, 203 (Del. Ch. 2006) (noting DUFTA has "not been interpreted as creating a cause of action for aiding and abetting" fraudulent transfers); Edgewater Growth Cap. Partners, L.P. v. H.I.G. Cap., Inc., C.A. No. 3601-VCS, 2010 WL 720150, at *2 (Del. Ch. Mar. 3, 2010) (noting DUFTA "does not create a cause of action for aiding and abetting, or conspiring to commit, a fraudulent transfer"); Yu v. GSM Nation, LLC, C.A. N17C-07-200 JRJ, 2018 WL 2272708, at *13 (Del. Apr. 24, 2018) (noting "there is no aiding and abetting liability for directors" under DUFTA).

are identical." See In re PennySaver USA Publ'g, LLC, 602 B.R. 256, 270 (Bankr. Del. 2019). Under either statute, to state a claim for actual fraudulent transfer, a plaintiff must allege that a "debtor made [a] transfer or incurred [an] obligation [w]ith actual intent to hinder, delay or defraud any creditor or debtor," see 6 Del. C. § 1304(a); Cal. Civ. Code § 3439.04(a), and, to state a claim for constructive fraudulent transfer, a plaintiff must allege that a "debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or . . . became insolvent as a result of the transfer or obligation," see 6 Del. C. § 1305(a); Cal. Civ. Code § 3439.05(a).

As discussed above, the Court has found Super Lighting has not adequately alleged that Greenberg, McArthur, Creer, Coglizer, or Rock engaged in conduct that "caused" or otherwise resulted in the transfer of Lunera's inventory and/or patents, see supra part III.D.2; consequently, Super Lighting's fraudulent transfer claims will be dismissed as to those defendants, see In re PennySaver, 602 B.R. at 271-72 (dismissing actual and constructive fraudulent transfer claims where complaint based on "theory of collective responsibility" lacked "specific allegations" of wrongdoing by "particular" defendants).

With respect to Bruggeman and Westly, the Director Defendants contend Super Lighting has not adequately alleged "any actual intent to hinder, delay or defraud Super Lighting" (see Mot. at 20:23-26, 21:18-20), or that the transfers were made for less than "reasonably equivalent value" (see Mot. at 20:8-10). The Court disagrees.

Although, as the Director Defendants point out, claims for actual fraudulent transfer are subject to a heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure, see In re Aphton Corp., 423 B.R. 76, 87 (Bankr. Del. 2010) (applying Rule 9(b) to DUFTA claim); Opperman v. Path, 87 F. Supp. 3d 1018, 1066 (N.D. Cal. 2014) (applying Rule 9(b) to CUVTA claim), the element of "intent . . . may be alleged generally," see Fed. R. Civ. P. 9(b); see also JPMorgan Chase Bank, N.A. v. Ballard, 213 A.3d 1211, 1245 (Del. Ch. 2019) (noting plaintiff alleging actual fraudulent

transfer "must generally plead facts showing intent to defraud [and plead] specific supporting facts describing the circumstances of the transfer" (internal quotation and citation omitted)), and, "[s]ince direct evidence of intent to hinder delay or defraud is uncommon, the determination typically is made inferentially from circumstances consistent with the requisite intent," see In re Beverly, 374 B.R. 221, 235 (B.A.P. 9th Cir. 2007). In that regard, both DUFTA and CUVTA contain a nonexclusive list of factors relevant to such determination, including, as applicable to the instant case, whether (1) "the debtor was insolvent," (2) "the debtor had been sued or threatened with suit" prior to the transfer, (3) "the transfer occurred shortly before or shortly after a substantial debt was incurred," (4) "the transfer was of substantially all of the debtor's assets," (5) "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred," (6) "the debtor removed or concealed assets," and (7) "the transfer . . . was disclosed or concealed." See 6 Del. C. § 1304(b); Cal. Civ. Code § 3439.04(b).

      Here, Super Lighting's allegations, construed in the light most favorable to Super Lighting, suffice to support a reasonable inference of fraudulent intent. In particular, Super Lighting alleges Lunera, while insolvent (see FAC ¶ 42), at a time the Arbitration and Attachment Motion were pending (see FAC ¶¶ 130-34, 168) and shortly after Bruggeman and Westly "threaten[ed]" that Lunera's assets would be sold at "extremely low prices" (see FAC ¶ 64),[17] sold "substantially all" of its assets (see FAC ¶ 119), specifically, its inventory in exchange for $75,000, which inventory was valued at $2 million by the buyer (see FAC ¶¶ 129-34, 156), and its patents in exchange for $125,000, which price the buyer described as "a real bargain" (see FAC ¶ 70). Super Lighting further alleges Lunera concealed assets by failing to identify over 91,000 units of inventory in its response to the arbitrator's order granting the Attachment Motion (see

---

[17] Additionally, as discussed above, Super Lighting alleges Lunera's counsel had suggested a private foreclosure sale "as a possible way to make it more difficult for Super Lighting . . . to enforce its arbitration award." (See FAC ¶ 74 (emphasis omitted).)

FAC ¶¶ 103-06), concealed the transfers of inventory to OEO by using an intermediary purchasing entity that was formed two weeks before the transfer was effectuated (see FAC ¶¶ 146, 159), and concealed the transfer of the patents by a sale at "light speed" after a single telephone call with the buyer (see FAC ¶¶ 165, 169).

Accordingly, to the extent the Director Defendants seek dismissal of the First and Second Causes of Action, the motion will be granted except as to Bruggeman and Westly.

## CONCLUSION

For the reasons stated above, the Director Defendants' motion to dismiss is hereby GRANTED in part and DENIED in part as follows:

1. To the extent the Director Defendants seek dismissal of the Third Cause of Action (Breach of Fiduciary Duty), the motion is (a) GRANTED as to McArthur, Creer, Coglizer, and Rock, and (b) DENIED as to Greenberg, Bruggeman, and Westly.

2. To the extent the Director Defendants seek dismissal of the First (Fraudulent Transfer of Inventory) and Second (Fraudulent Transfer of Patents) Causes of Action, the motion is (a) GRANTED as to Greenberg, McArthur, Creer, Coglizer, and Rock, and (b) DENIED as to Bruggeman and Westly.

3. As there is no showing the above-noted deficiencies cannot be cured, leave to amend is hereby GRANTED, and Super Lighting's Second Amended Complaint, if any, shall be filed no later than July 6, 2022.

In light of the above, the Case Management Conference currently scheduled for July 8, 2022, is hereby CONTINUED to August 19, 2022, at 10:30 a.m.  A Joint Case Management Statement shall be filed no later than August 12, 2022.

**IT IS SO ORDERED.**

Dated: June 8, 2022

MAXINE M. CHESNEY
United States District Judge