IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> JOHN BRUGGEMAN, et al., <br><br> Defendants. | Case No. 21-cv-08489-MMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SIGNIFY HOLDING B.V.'S MOTION TO DISMISS** |

Before the Court is the "Motion to Dismiss Pursuant to Rule 12(b)(6)," filed July 18, 2022, by defendant Signify Holding B.V. ("Signify"). Plaintiff Jiaxing Super Lighting Electric Appliance Co., Ltd. ("Super Lighting") has filed opposition, to which Signify has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## FACTUAL BACKGROUND[2]

Plaintiff Super Lighting, a lighting manufacturer, supplied traditional LED lighting products to nominal defendant Lunera Lighting, Inc. ("Lunera"), a distributor, pursuant to a Purchase and Development Agreement (hereinafter, "the Agreement"). (See FAC ¶¶ 4, 5, 27.) At all relevant times, Lunera's board of directors was comprised entirely of John Bruggeman ("Bruggeman"), Steve Westly ("Westly"), Frank Creer ("Creer"), Dave Coglizer ("Coglizer"), Susan McArthur ("McArthur"), Alan Greenberg ("Greenberg"), and Richard Rock's ("Rock") (collectively, "Director Defendants").

After Lunera "stopped paying Super Lighting's invoices for delivered products"

---

[1] By order filed October 24, 2022, the Court took the matter under submission.

[2] The following facts are taken from the allegations of the operative complaint, the "First Amended Verified Complaint" ("FAC").

(see FAC ¶ 28) and "defaulted on its own proposed payment plan" (see FAC ¶ 32), Super Lighting "terminated the Agreement" (see FAC ¶ 34) and filed a breach of contract action against Lunera, which action went to arbitration (hereinafter, "the Arbitration") pursuant to an arbitration provision in the Agreement (see FAC ¶¶ 40-41). While the Arbitration was pending, Super Lighting, in response to actions taken by Bruggeman to "shut Super Lighting out of [Lunera's] . . . ongoing negotiations" with potential acquirers of Lunera (see FAC ¶ 71), filed in the Arbitration an "Emergency Motion for a Writ of Attachment" (hereinafter, "the Attachment Motion") (see FAC ¶ 83), which motion was granted on January 18, 2019 (see FAC ¶ 103). Thereafter, Lunera "defaulted and failed to appear at the . . . Arbitration hearing and trial," after which "the arbitrator issued a final award in favor of Super Lighting" that was confirmed by the United States District Court for the Northern District of California. (See FAC ¶ 186.) On July 30, 2019, Lunera "officially dissolved." (See FAC ¶ 188.)

Through post-judgment discovery, Super Lighting learned that Lunera had sold "substantially all" of its assets in January 2019, (see FAC ¶¶ 115, 187), including Lunera's 37 patents, which had been sold to defendant Tynax, Inc. ("Tynax"), a broker that "acquir[ed] the [p]atents on behalf and at the request of Signify" for $125,000 (see FAC ¶ 161) and, on the same day, "transferred the [p]atents to Signify in exchange for $160,000 ($125,000 purchase price, plus a $35,000 commission to Tynax) pursuant to an IP Transfer Agreement" (see FAC ¶ 167). To date, Super Lighting's arbitration award "remains wholly unpaid." (See FAC ¶ 187.)

**PROCEDURAL BACKGROUND**

Based on the above, Super Lighting asserted, as against the Director Defendants, several causes of action, including a claim for "Actual and Constructive Fraudulent Transfer of Patents," which claim it also brought as the sole claim against Tynax and Signify. (See FAC ¶¶ 224-35.) Thereafter, the Director Defendants moved to dismiss each of the causes of action asserted against them, and the Court granted in part and denied in part the Director Defendants' motion, finding Super Lighting had stated a claim

2

for Fraudulent Transfer of Patents as against Bruggeman and Westly. (See Order, filed June 8, 2022 (hereinafter, "June 8 Order") at 16:18-21; 17:15-16.) Signify now moves for dismissal on the sole claim alleged against it.[3]

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

---

[3] On January 5, 2022, upon Super Lighting's motion, the Clerk of Court entered Tynax's default under Federal Rule of Civil Procedure 55(a).

3

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the complaint. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, however, may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, a district court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referenced in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

## DISCUSSION

Super Lighting's claim against Signify for Actual and Constructive Fraudulent Transfer is set forth in the Second Cause of Action in the FAC. By the instant motion, Signify seeks dismissal of that cause of action, as well as Super Lighting's claim for punitive damages. The Court first turns to Super Lighting's fraudulent transfer claim and then addresses the issue of punitive damages.

**A. Fraudulent Transfer**

The pleading requirements for fraudulent transfer under the Delaware Uniform Fraudulent Transfer Act ("DUFTA") and California Uniform Voidable Transfer Act ("CUVTA") are identical. See In re PennySaver USA Publ'g, LLC, 602 B.R. 256, 267 (Bankr. Del. 2019). Under either statute, to state a claim for actual fraudulent transfer against the debtor transferor, a plaintiff must allege that a "debtor made [a] transfer or incurred [an] obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor," see 6 Del. C. Section 1304(a); Cal. Civ. Code Section 3439.04(a), and to state a claim for constructive fraudulent transfer, a plaintiff must allege that a "debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time

4

or . . . became insolvent as a result of the transfer or obligation," see 6 Del. C. Section 1305(a); Cal. Civ. Code Section 3439.05(a). Both DUFTA and CUVTA provide, in relevant part, for a cause of action by a creditor against a debtor-transferor and/or a transferee, including an action for judgment against "(1) [t]he first transferee of the asset . . . or (2) [a]ny subsequent transferee other than a good-faith transferee . . . who took for value[.]" See 6 Del. C. Section 1308(b)(1)-(2); see also Cal. Civ. Code Section 3439.08(b)(1).

The Court first considers actual fraudulent transfer, and then proceeds to constructive fraudulent transfer.[4]

### 1. Actual Fraudulent Transfer

To state a claim for actual fraudulent transfer, a plaintiff need only allege the "debtor incurred the obligations with actual intent to hinder, delay or defraud the debtor's creditors." See In re Syntax-Brillian Corp., 573 F. App'x 154 (3d Cir. 2014) (internal quotation and citation omitted) (emphasis in original); see also In re Cohen, 199 B.R. 709, 716-17 (B.A.P. 9th Cir. 1996) (holding "[t]he focus in the inquiry into actual intent is on the state of mind of the debtor"; further holding "[c]ulpability on the part of the . . . transferee[] is not essential"). Further, the "adequacy or equivalence of consideration

---

[4] At the outset, however, with respect to both actual and constructive fraudulent transfer, to the extent Super Lighting alleges Signify is liable under a theory of aiding and abetting and/or conspiracy, the Court finds the claim is subject to dismissal. First, such claim "is not cognizable under [DUFTA]." See Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A., 879 F.3d 79, 89 (3d Cir. 2018). Second, even assuming such cause of action may exist under CUVTA, Super Lighting has not pled facts sufficient to establish Signify's knowledge of, or intent to assist or aid, the Director Defendants' wrongdoing. (See Opp. at 11:2-4 (noting allegations in Complaint demonstrate, at most, Signify's "actual knowledge of facts and circumstances sufficient to put it on inquiry notice that Lunera was possibly insolvent and that Lunera was possibly transferring the Patents for a fraudulent purpose" (emphasis in original))); see, e.g., Casey v. U.S. Bank National Ass'n, 127 Cal.App.4th 1138, 1145 (2005) (noting "California courts have long held that liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted"); J. B. v. G6 Hosp., LLC, No. 19-CV-07848-HSG, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020) (observing "'[t]he sine qua non of a conspiratorial agreement is the knowledge on the part of the alleged conspirators of its unlawful objective and their intent to aid in achieving that objective'" (quoting Kidron v. Movie Acquisition Corp., 47 Cal. Rptr. 2d 752 (Cal. Ct. App. 1995))).

provided for the actually fraudulent transfer is not material to the question whether the transfer is actually fraudulent." See id. at 717.

Here, as set forth in the Court's June 8 Order, Super Lighting's allegations suffice to support a reasonable inference of actual fraudulent intent on the part of Bruggeman and Westly, who, in their capacity as directors, acted on behalf of Lunera, the debtor-transferor.

Although, in support of its Motion, Signify points to its reliance on evidence that was not submitted by the Director Defendants, namely, a copy of the complete email chain in which Tynax referred to the sale price of the patents as a "real bargain," a phrase to which the Court cited in its June 8 Order, the Court is not persuaded that such new evidence suffices to alter the Court's prior determination.[5] In particular, even if the Court were to accept Signify's argument that the cited statement, when read in the full context of the parties' negotiations, constitutes no more than a sales pitch on the part of Tynax (see Motion at 10:4-7), the remaining "badges of fraud," see Pennysaver, 602 B.R. at 271, on which the Court relied are sufficient to support a finding of actual intent to defraud on the part of Lunera, see id. (holding "[t]he presence or absence of any single badge of fraud is not conclusive"); see also 6 Del. C. § 1304(b) (setting forth factors for consideration "in determining actual intent"); Cal. Civ. Code § 3439.04(b) (same)).[6]

---

[5] Signify's undisputed request that the Court take judicial notice of said document is GRANTED. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (holding courts "may . . . consider . . . documents [deemed] incorporated by reference in the complaint . . . without coverting [a] motion to dismiss into a motion for summary judgment.").

[6] To assist in determining whether a transfer was made with the "actual intent to hinder, delay, or defraud any creditor of the debtor," DUFTA and CUVTA include a nonexclusive list of relevant factors including, as applicable to the instant case, whether (1) "the debtor was insolvent," (2) "the debtor had been sued or threatened with suit" prior to the transfer, (3) "the transfer occurred shortly before or shortly after a substantial debt was incurred," (4) "the transfer was of substantially all of the debtor's assets," (5) "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred," (6) "the debtor removed or concealed assets," and (7) "the transfer . . . was disclosed or concealed." See 6 Del. C. § 1304(b); Cal. Civ. Code § 3439.04(b).

In that regard, the following badges of fraud remain: (1) Lunera's insolvency at the time of transfer (see FAC ¶ 42), (2) the then pending Arbitration and Attachment motion concerning Lunera's assets (see FAC ¶¶ 130-134, 168), (3) Bruggeman and Westly's threat that Lunera's assets would be sold at "extremely low prices" (see FAC ¶ 64), (4) Lunera's sale of substantially all of its assets, namely, its patents and inventory, the latter in exchange for $75,000 but valued at $2 million by the buyer (see FAC ¶¶ 119, 129-134, 156), (5) Lunera's concealment of its assets in response to the arbitrator's order granting the Attachment motion (see FAC ¶¶ 103-106), (6) Lunera's concealment of inventory transfers by use of an intermediary purchasing entity formed two weeks before the transfer was effectuated (see FAC ¶¶ 146, 159), and (7) Lunera's concealment of the patent transfer by a sale at "light speed" after a single telephone call with the buyer (see FAC ¶¶ 165, 169); see also In re AgFed USA, LLC, 546 B.R. 318, 335 (Bankr. D. Del. 2016) (noting "[a]lthough the presence of a single . . . badge of fraud . . . may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud" (internal quotation and citation omitted)).[7]

Accordingly, to the extent the Second Cause of Action is based on actual fraudulent transfer, the motion will be denied.

### 2. Constructive Fraudulent Transfer

Unlike actual fraudulent transfer, "all that is needed" to plead a constructive fraudulent transfer claim "is an allegation that there was a transfer for less than reasonably equivalent value at a time when the [d]ebtor[] [was] insolvent." See Pennysaver, 602 B.R. at 266; see also Lachapelle v. Kim, No. 15-CV-02195-JSC, 2015 WL 7753235, at *7 (N.D. Cal. Dec. 2, 2015) ("[A]t its core, a constructive fraudulent transfer claim has two elements: reasonable equivalent value and insolvency." (internal

---

[7] A detailed account of the factual background from which the above factors are taken is set forth in the June 8 Order. (See June 8 Order at 1:22-3:14.)

quotation and citation omitted)).  In the instant case, there being no dispute as to Super Lighting's insolvency at the time of the transfer at issue, the Court turns to the question of whether Super Lighting has adequately alleged a transfer for less than reasonably equivalent value.[8]

"Determining reasonable equivalence requires case-by-case adjudication, which depends on all the facts of each case, an important element of which is market value." In re BMT-NW Acquisition, LLC, 582 B.R. 846, 858 (Bankr. D. Del. 2018) (internal quotation and citation omitted).  "Other factors include whether the transaction was at arm's length, and whether the transaction was in good faith." Id.  At the pleading stage, however, the complaint need only include allegations "specif[ying] in detail the date of the transfer, the amount of the consideration received, [and] the alleged value of the [asset] on the date of the transfer," see In re AstroPower Liquidating Tr., 335 B.R. 309, 333-34 (Bankr. D. Del. 2005).

Here, Super Lighting has identified the date of the transfer, the transferor, the transferee, and the price paid by Signify (see FAC ¶¶ 161, 166, 167), but has not pled facts establishing the actual market value of the patents, see Astropower, 335 B.R. at 334.  Rather, Super Lighting's allegations as to market value are limited to a statement that the consideration Lunera received for the patents "was grossly negligent and for less than reasonably equivalent value" (see FAC ¶ 161), which conclusory assertion, absent factual support, does not suffice for purposes of pleading its claim.  See Iqbal, 556 U.S. at 178 (holding "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

---

[8] To the extent Super Lighting argues the Court, in its June 8 Order, "has already held that Super Lighting adequately pleaded facts establishing that the patents were transferred for less than reasonably equivalent value" (see Opp. at 9:3-5), the Court notes it made no finding to that effect.  Although, after setting forth therein the Director Defendants' argument that Super Lighting "has not adequately alleged 'any actual intent to hinder, delay or defraud Super Lighting,' or that the transfers were made for less than 'reasonably equivalent value'" (see June 8 Order at 16:19-21 (internal citations omitted)), the Court stated "[t]he Court disagrees," the ensuing discussion pertains solely to a rejection of the first of those two contentions.

Accordingly, to the extent the Second Cause of Action is based on constructive fraudulent transfer, the motion will be granted.

**B. Punitive Damages**

Signify seeks dismissal of Super Lighting's claim for punitive damages because, according to Signify, "[Super Lighting's] claims against Signify amount at best to allegations of gross negligence." (See Mot. at 15:26-16:2) (emphasis omitted) (internal quotation and citation omitted); see also Molina v. J.C. Penney Co., Inc., No. C-14-04201-DMR, 2015 WL 183899, at *3 (N.D. Cal. Jan. 14, 2015) (holding "[t]he standard for punitive damages requires behavior more offensive than the standard for gross negligence"). In response, Super Lighting points to no allegations supporting a finding to the contrary, and instead argues it is "conceivable that Signify's conduct rises to the level to justify an award of punitive damages." (See Opp. at 13:5-6.)  Although, as Super Lighting notes, discovery may subsequently provide the missing factual support, at present those facts remain missing.

Accordingly, the punitive damages claim is subject to dismissal.

## CONCLUSION

For the reasons stated above, Signify's motion is hereby GRANTED in part and DENIED in part as follows:

1. To the extent the Second Cause of Action is based on constructive fraudulent transfer and to the extent the claim for relief includes punitive damages, the motion is hereby GRANTED.
2. In all other respects, the motion is hereby DENIED.
3. As there is no showing the deficiencies noted above cannot be cured, leave to amend is hereby GRANTED, and Super Lighting's Second Amended Complaint, if any, shall be filed no later than January 5, 2022.

**IT IS SO ORDERED.**

Dated: December 2, 2022

MAXINE M. CHESNEY
United States District Judg