IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAXING SUPER LIGHTING ELECTRIC APPLIANCE CO., LTD., <br><br>Plaintiff, <br><br>v. <br><br>JOHN BRUGGEMAN, et al., <br><br>Defendants. | Case No. 21-cv-08489-MMC <br><br>**ORDER DENYING DEFENDANT SIGNIFY HOLDING B.V.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

Before the Court is defendant Signify Holding B.V.'s ("Signify") motion, filed May 25, 2023, "to Dismiss Third Amended Complaint," whereby Signify seeks dismissal of one of the claims in the Third Amended Verified Complaint ("TAC"), the operative pleading in the instant action. Plaintiff Jiaxing Super Lighting Electric Appliance Co., Ltd. ("Super Lighting") has filed opposition, to which Signify has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND AND PROCEDURAL HISTORY**

In the TAC, Super Lighting asserts against Signify a single cause of action for "Actual and Constructive Fraudulent Transfer of Patents" under the California Uniform Voidable Transfer Act ("CUVTA") and the Delaware Uniform Fraudulent Transfer Act ("DUFTA"). (See TAC ¶¶ 245-256.) In particular, Super Lighting, in the Second Cause of Action, alleges that Signify, by purchasing 37 patents ("the Patents") belonging to debtor and nominal defendant Lunera Lighting, Inc. ("Lunera") for consideration that was "less than reasonably equivalent value" (see TAC ¶ 250),[2] "put the Patents . . . beyond Super

---

[1] By order filed June 27, 2023, the Court took the matter under submission.

[2] Super Lighting alleges the Patents were sold to defendant Tynax, Inc. ("Tynax"), a broker that "acquir[ed] the Patents on behalf of and at the request of Signify" for

Lighting's reach and delayed, hindered, and impeded its ability to enforce its arbitration award and [j]udgment" against Lunera (see TAC ¶ 253).  Based thereon, Super Lighting seeks equitable relief and damages.  (See TAC ¶ 256.)

By order filed December 2, 2022 ("December 2 Order"), the Court granted in part and denied in part Signify's Motion to Dismiss the First Amended Verified Complaint ("FAC") to the extent it alleged a claim against Signify for "Actual and Constructive Fraudulent Transfer of Patents."  In particular, the Court granted the motion to the extent such claim was based on constructive fraudulent transfer of the Patents, and denied the motion in all other respects.  (See December 2 Order at 9:19-22.)  In so ruling, the Court found Super Lighting "ha[d] not pled facts establishing the actual market value of the [P]atents" (see December 2 Order at 8:15-16), and that Super Lighting's "conclusory assertion" that the consideration Lunera received for the Patents was "less than reasonably equivalent value" did not, "absent factual support . . . suffice for purposes of pleading its [constructive fraudulent transfer] claim" (see December 2 Order at 8:18-26 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))).

Super Lighting, with leave of Court, filed the Second Amended Verified Complaint ("SAC"), in which Super Lighting added a description of the Patents, namely, that "Lunera's Patents fall into two categories—structure and circuit—and were used in three categories of Lunera products (i) place-in-lamps; (ii) high intensity discharge lamps; and (iii) linear lighting," and, as to value, alleged:

> Lunera's internal financial and operating data, including Lunera's own financial statements and historical sales and projections, as well as several industry factors relevant to the Patents such as licensing, remaining patent life, and projected segment revenue growth, establish that the Patents had an actual fair market value of between $5.5 million and $6.9 million on January 18, 2019, the date of their transfer.

(See SAC ¶ 162; see also SAC ¶ 110.)

---

$125,000 (see TAC ¶ 161) and, on the same day, "transferred the Patents to Signify in exchange for $160,000 ($125,000 purchase price, plus a $35,000 commission to Tynax) pursuant to an IP Transfer Agreement" (see TAC ¶ 185).

2

By order filed April 26, 2023 ("April 26 Order"), the Court granted Signify's Motion to Dismiss the SAC, finding Super Lighting's additional allegations as to the value of the patents insufficient to cure the deficiencies identified in the December 2 Order. In particular, the Court found the alleged valuation range, to the extent "derive[d] from Lunera's 'financial statements and historical sales and projections,'" (see April 26 Order at 4:3-5 (quoting SAC ¶¶ 110, 162)), was unsupported by "specific data" obtained therefrom, or allegations as to "how any such figures are relevant to patent valuation" (see April 26 Order at 4:5-6), and to the extent "derive[d] from 'industry factors relevant to the Patents such as licensing, remaining patent life, and projected segment revenue growth'" (see April 26 Order at 4:7-9 (quoting SAC ¶ 162)), was lacking in "factual elaboration" (see April 26 Order at 4:9). The Court further noted that, to the extent the alleged valuation range derived from the reports of "outside experts" engaged to "perform a preliminary valuation of the [P]atents," the SAC "ma[de] no mention of such experts, let alone any of their findings." (See April 26 Order at 4:24-26.)

Super Lighting, again with leave of Court, filed the TAC, which pleading contains revised allegations as to the value of the Patents,[3] as well as six supporting Schedules.[4] (See TAC ¶¶ 162-179.)

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of

---

[3] Although Super Lighting previously alleged the Patents were worth $5.8 million to $6.9 million (see SAC ¶¶ 110, 162), Super Lighting now asserts the "actual fair market value" of the Patents at the time of their transfer on January 18, 2019, was "between $5.8 million and 7.2 million" (see TAC ¶¶ 110, 164).

[4] The Schedules, which are attached to the TAC as Exhibit A, are titled: (1) "Summary of LED Patents"; (2) "Summary of Values"; (3) "Historical and Projected Income Statements"; (4) "Value of LED Patents (PLs)"; (5) "Value of LED Patents (HIDs)"; and (6) "Value of LED Patents (Linears)." (See TAC Ex. A.)

the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

By the instant motion, Signify argues Super Lighting has failed to cure the deficiencies noted by the Court in its previous order of dismissal, in that, according to Signify, Super Lighting again fails to plead facts plausibly supporting the alleged market value of the Patents.

The pleading requirements for fraudulent transfer under DUFTA and CUVTA are identical.  See In re PennySaver USA Publ'g, LLC, 602 B.R. 256, 267 (Bankr. Del. 2019). Under either statute, to state a claim for constructive fraudulent transfer, a plaintiff must allege that a "debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or . . . became insolvent as a result of the transfer or obligation." See 6 Del. C. Section 1305(a); Cal. Civ. Code Section 3439.05(a); see also Lachapelle v.

4

Kim, 2015 WL 7753235, at *7 (N.D. Cal. Dec. 2, 2015) ("[A]t its core, a constructive fraudulent transfer claim has two elements: reasonable equivalent value and insolvency." (internal quotation and citation omitted)).[5]

"Determining reasonable equivalence requires case-by-case adjudication, which depends on all the facts of [the] case, an important element of which is market value." In re BMT-NW Acquisition, LLC, 582 B.R. 846, 858 (Bankr. D. Del. 2018) (internal quotation and citation omitted). Although, as the Court noted in its December 2 Order, a complaint, "[a]t the pleading stage, . . . need only include allegations specifying in detail the date of the transfer, the amount of the consideration received, and the alleged value of the asset on the date of the transfer" (see December 2 Order at 8:9-12 (citing In re AstroPower Liquidating Tr., 335 B.R. 309, 333-34 (Bankr. D. Del. 2005))), a complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face," see Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly 550 U.S. 544, 570 (2007)).

In the instant case, Super Lighting, as noted, alleges the "actual market value" of the Patents on the date of their transfer was "between $5.8 million and $7.2 million." (See TAC ¶¶ 110, 164.) In contrast to the SAC, however, the TAC contains "factual matter" supporting the alleged valuation. See Iqbal, 556 U.S. at 678. In particular, the TAC identifies the source of the alleged valuation range, namely, a preliminary valuation analysis performed by B. Riley Advisory Services ("B-Riley")[6] (see TAC ¶ 163), the valuation methodology employed by B-Riley, namely, the Relief-from-Royalty ("RFR") methodology (see TAC ¶ 165),[7] the variables relevant to such methodology, namely

---

[5] Here, as before, the parties do not dispute Super Lighting's insolvency at the time of the transfer at issue.

[6] Super Lighting alleges it engaged B-Riley, "a leading national financial and expert consulting firm," in August 2022 for the purpose of "perform[ing] a preliminary valuation of the fair market value of the Patents at the time of their transfer." (See TAC ¶ 163.)

[7] Super Lighting further alleges the RFR method "calculates value based on the hypothetical royalty payments that would be saved by owning the asset rather than

5

"profitability" of the Patents (see TAC ¶¶ 169-170), "remaining patent life" (see TAC ¶ 171), and "projected segment revenue growth" (see TAC ¶ 172), the raw data used to assess such variables, namely, Lunera's historical financial data and industry information (see TAC ¶¶ 173-75), and the steps performed in connection with the RFR analysis (see TAC ¶¶ 175-178).

Signify contends Super Lighting fails to allege facts sufficient to make its asserted valuation range plausible, arguing (1) the new allegations in the TAC are essentially an expert opinion that cannot be considered at the motion to dismiss stage (see Def.'s Reply in Supp. of Mot. to Dismiss ("Reply") 2:2-4, Dkt. No. 129); (2) the new allegations "fail to follow how patents are valued" (see Def.'s Mot. to Dismiss Third Am. Compl. ("Mot.") 10:20-22, Dkt. No. 122); and (3) the remaining facts before the Court do not support a plausible inference that price Signify paid for the Patents was not reasonably equivalent value (see Mot. 14:2-3, 15:17-18). The Court addresses each argument in turn.

**A. Expert Opinion**

Signify contends the new allegations in the TAC are "not properly considered" at the motion to dismiss stage because they reflect "an expert opinion that is categorically different in nature than factual allegations." (See Reply 2:2-4). Such argument is, for the reasons set forth below, unavailing.

At the outset, the Court notes such argument is raised for the first time in Signify's reply in support of the instant motion, leaving Super Lighting with no opportunity to respond. If, as Signify contends, Super Lighting's reliance on an expert's findings for purposes of pleading the market value of the Patents is "fatal" to its claims (see Reply 4:11), such argument should have been included in its opening brief. See TPK Touch Sols., Inc. v. Wintek Electro-Optics Corp., 2013 WL 5289015, at *4 (N.D. Cal. Sept. 18, 2013) (holding "[t]he Court does not consider new facts or argument made for the first

---

licensing it and having to pay license fees to a third party that hypothetically owns the patents." (See TAC ¶ 165.)

6

time in a reply brief").

Moreover, the cases on which Signify relies for the proposition that courts "routinely ignore expert opinions" at the motion to dismiss stage do not preclude Super Lighting's incorporating B. Riley's findings in the TAC.  (See Reply 4:7.)  Although "[m]ost district courts within the circuit have concluded that it is inappropriate to consider an expert affidavit [attached to the complaint] on a motion to dismiss under Rule 12(b)(6)," see City of Royal Oak Ret. Sys. v. Juniper Networks, Inc., 2013 WL 2156358, at *7 (N.D. Cal. May 17, 2013), plaintiffs may "include [an] expert's nonconclusory assertions within specific paragraphs in the complaint, see DeMarco v. DepoTech Corp., 149 F. Supp. 2d 1212, 1222 (S.D. Cal. 2001) (granting defendant's motion to strike expert affidavit attached to operative complaint; denying motion to strike portions of operative complaint derived from said affidavit).  Here, to the extent the allegations in the TAC reflect B-Riley's analysis, such allegations constitute "non-conclusory assertions" as to market value,[8] which are properly considered in determining whether plaintiff has plausibly made out the elements of a constructive fraudulent conveyance claim.[9]

---

[8] The Court has not considered, however, the supporting "Schedules" attached to the TAC.  See Benzon v. Morgan Stanley Distributors, Inc., 2004 WL 62747, at *3 (M.D. Tenn. Jan. 8, 2004), aff'd, 420 F.3d 598 (6th Cir. 2005) (declining to consider "expert witness' analysis and graphs" attached to complaint).

[9] The cases cited by Signify are distinguishable, in that they concerned either (1) expert reports/affidavits attached to complaints, rather than allegations in the complaints based on such materials, see Rivac v. Ndex W. LLC, 2013 WL 3476659, at *2 (N.D. Cal. July 10, 2013) (denying plaintiff's request to deem 125-page "Mortgage Securitization Audit & Analysis Report" incorporated in complaint by reference; noting "the facts alleged in the complaint [were] not related in any comprehensible way to any facts" in said report); Stuart v. Cadbury Adams USA, LLC, 2010 WL 1407303, at *4 (C.D. Cal. Apr. 5, 2010), aff'd, 458 F. App'x 689 (9th Cir. 2011) (declining to consider expert report attached to complaint); or (2) allegations in a complaint reflecting expert opinions on questions of law, see Yuan v. Facebook, Inc., 2021 WL 4503105, at *1-3 (N.D. Cal. Sept. 30, 2021) (declining to consider expert's "opinions as set forth in . . . the [complaint]"; noting such opinions consisted of inadmissible conclusions regarding whether alleged misstatements would mislead reasonable investors and whether alleged losses were proximately caused by such misrepresentations, rather than "new facts or evidence"); City of Royal Oak, 2013 WL 2156358, at *6-7 (declining to consider expert opinion, incorporated in complaint, that readers of defendant's financial statements would not understand effect of

Accordingly, the TAC is not subject to dismissal on the ground that it is supported by B-Riley's analysis.

### B. Valuation Methodology

Next, Signify argues that, for five reasons, B-Riley's preliminary valuation analysis "fails to follow how patents are valued." (See Mot. 10:20-22.) Such argument is, for the reasons set forth below, unavailing.

First, Signify contends B. Riley's valuation of the Patents is "facially deficient" (see Mot. 10:24-25) because it is based on the RFR method, and therefore assumes, incorrectly, that "the patent owner (Lunera) will be selling products in the future that would otherwise incur a royalty" (see Mot. 11:1-2). Signify cites no authority, however, for the idea that intellectual property belonging to a company in the process of dissolving cannot be valued using the RFR method,[10] and indeed, such proposition appears inconsistent with the general concept of valuation in a fraudulent transfer case, where, as Super Lighting points out, the "debtor is often insolvent, dissolved and/or in bankruptcy and no longer engaged in ongoing operations." (See Pltf.'s Opp'n to Mot. to Dismiss Third Am. Compl. ("Opp.") 9:13-15, Dkt. No. 128.) Moreover, the new allegations in the TAC explain how such analysis, which aims to calculate value "based on the hypothetical royalty payments that would be saved by owning the asset" (see TAC ¶ 165), can be performed using a combination of Lunera's historical financial information and industry data (see TAC ¶ 172 (noting "B-Riley conservatively estimated expected revenue growth

---

its adoption of new revenue recognition rules); Kohler v. Litehouse, Inc., 2012 WL 6217635, at *3 (N.D. Cal. Dec. 13, 2012) (striking from complaint quotations from expert report that "relay[ed] [expert's] opinion, but ma[de] no statements of fact"); In re Ashworth, Inc. Securities Litigation, 2001 WL 37119391, at *3 (S.D. Cal. Dec. 3, 2001) (striking from complaint allegations based on expert's "legal conclusions").

[10] Signify's reliance on Humane Soc'y of United States v. Perdue, 290 F. Supp. 3d 5 (D.D.C. 2018) is misplaced, in that the trademarks at issue therein had "been declared to be obsolete," see id. at *9; further, the valuation method on which the court's decision rested was not the RFR method, but, rather, a "cost approach," which "considers how much it would cost to replace the asset," see id. at *22.

8

rates as of the valuation date, which estimates also considered estimated market share for the different product types based on historical Lunera revenue data and the broader lighting industry data from the commonly used data sources, including *TrendForce*, *LEDinside*, and *IBISWorld*")).

Second, Signify contends the TAC is devoid of allegations that "Lunera's products practice the Patents in question" (see Mot. 11:18-19), such that "there is no proof that any royalty would be avoided by ownership of that patent" (see Mot. 12:8-10). This argument likewise is unsupported by any authority cited by Signify. Rather, the cases on which Signify relies, namely, QuickLogic Corp. v. Konda Techs., Inc., 618 F. Supp. 3d 873 (N.D. Cal. 2022) and UTTO Inc. v. Metrotech Corp., 2022 WL 17968846 (N.D. Cal. July 8, 2022), concern the question of infringement and hold that a defendant's products, not the plaintiff's, must practice the patented claims. Moreover, as Super Lighting points out, to the extent Signify argues Super Lighting has provided "no proof that any Lunera product—past or present—practices any claim of any patent" (see Mot. 1:22-24), such argument ignores the TAC's numerous allegations regarding Lunera products "using" the Patents here at issue (see TAC ¶ 167 (noting "Lunera's own financial statements through the valuation date showing its historical sales and revenues of the product lines in which the Patents were used are relevant and important to the RFR Method"); ¶ 169 ("noting B-Riley reviewed and analyzed Lunera documents pertaining to the Patents, including . . . their relevant products"); ¶ 170 (noting "[t]he Patents used in the three product groups varied from low to high profitability"); ¶ 173 (noting "B-Riley also analyzed Lunera's historical revenues from the Lunera products that used the Patents, including data showing the percentage of total sales revenue for each of the three product groups"); ¶ 174 (noting "[t]he Lunera sales data was also used to project the future revenue stream for each group of products that used the Patents")).

Third, Signify asserts the new allegations in the TAC are insufficient to plausibly establish the value of the Patents because the TAC "does not allege that the preliminary expert report [from B-Riley] made any comparison to specific non-Lunera licenses" or

"identify a single non-Lunera license that would be comparable to any of the 37 Patents." (See Mot. 12:24-26.) According to Signify, the absence of such allegations is fatal to Super Lighting's ability to plead a constructive fraudulent transfer claim because "patent valuation values the asserted patent based on comparable licenses." (See Mot. 12:12-13 (internal quotation and citation omitted).) Signify does not, however, cite any authority for the proposition that a plaintiff must identify specific comparable patents and/or licenses to survive a motion to dismiss, and the Court finds the TAC's general allegations regarding comparable licenses sufficient at this stage. (See TAC ¶ 176 (alleging, for purposes of estimating fair royalty rate for the Patents, B-Riley "analyzed publicly available lighting industry license agreements for lighting patents suitable for comparison with the Patents, including relevant patent licensing agreements previously entered into by Super Lighting," as well as "royalty rate data from *RoyaltySource* in conjunction with other patent license agreements in the lighting industry").)

Fourth, Signify argues, Super Lighting "has not alleged . . . any facts from which it can possibly be determined what the Patents cover in comparison with other patents in the relevant market" (see Mot. 13:8-10), and, consequently, "has not alleged any facts from which to deduce" the value of the Patents at issue (see Mot. 13:15-16). Such argument, however, fails for the reason stated above, namely, Signify's failure to cite any authority demanding such specificity at the pleading stage.

Lastly, and inconsistent with the first of the above-discussed arguments, Signify contends "the fact that [Super Lighting] chose not to attach the purported preliminary valuation report [authored by B-Riley] renders all of the allegations based upon the report unreliable." (See Mot. 13:17-19.) In support thereof, however, Signify cites cases applying the doctrine of incorporation by reference, which doctrine allows district courts to consider, as incorporated in the complaint, any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.2003) (noting doctrine "may apply, for example, when a plaintiff's claim about

10

insurance coverage is based on the contents of a coverage plan, or when a plaintiff's claim about stock fraud is based on the contents of SEC filings" (internal citations omitted)).  Here, however, Signify does not ask the Court to consider any document referenced in the TAC.

Accordingly, the TAC is not subject to dismissal on the ground that it "fail[s] to follow how patents are valued."  (See Mot. 10:20-22.)

### C. Plausibility

Lastly, Signify argues there are "no other factual allegations in the SAC related to the Patents sale which support a plausible inference that [the price Signify paid for the patents] was not reasonably equivalent value" (see Mot. 14:2-3), and that "other allegations and facts before the Court make [p]laintiff's claim [as to value] . . . implausible" (see Mot. 15:17-19).  The Court is, again, unpersuaded.

First, to the extent Signify argues Super Lighting has failed to plead "facts regarding whether the Patent transactions between Lunera and Tynax, and Tynax and Signify were at 'arms-length' and whether Signify 'acted in good faith'" (see Mot. 14:4-6; see also Reply 9:26-10:7), the Court has already found such facts, while potentially relevant to the question of whether the Patents were sold for reasonably equivalent value, are not themselves necessary elements of Super Lighting's claim (see December 2 Order at 8:9-12 (noting "[a]t the pleading stage . . . the complaint need only include allegations specifying in detail the date of the transfer, the amount of the consideration received, and the alleged value of the asset on the date of the transfer" (internal quotation, citation, and alteration omitted)).

Further, to the extent Signify argues the alleged valuation range is facially implausible, in that it would have been "completely irrational" for Lunera to sell the Patents for $125,000 if they were worth between $5.8 million and $7.2 million (see Mot. 16:8-10), such argument overlooks the central premise of this lawsuit as alleged in the TAC, namely, that Lunera's directors "caused Lunera to fraudulently transfer its remaining assets in a fire sale for grossly inadequate consideration in retaliation against

11

Super Lighting" (see TAC ¶ 2; see also December 2 Order at 6:3-5 (noting Super Lighting's allegations "suffice to support a reasonable inference of actual fraudulent intent on the part of" Lunera's directors)). Similarly, to the extent Signify contends the alleged valuation range is implausible absent facts showing why a "third-party bidder only bid $100,000 for the patents, . . . why Tynax did not cash in its winning lottery ticket when it acquired both the Patents for $125,000 and the freedom to sell the Patents to whomever it wished,[11] and why Signify balked at paying $125,000 plus commission for the Patents" (see Mot. 17:2-8), such arguments go to the weight of Super Lighting's case, rather than its ability to plead a constructive fraudulent transfer claim.

Accordingly, the TAC is not subject to dismissal on the ground that it lacks allegations sufficient to support a plausible inference that the Patents were not sold for reasonably equivalent value.

**D. Summary**

In sum, the Court finds each of the above arguments asserted by Signify unpersuasive, and, accordingly, finds the factual allegations in the TAC sufficient to state a claim for constructive fraudulent transfer.

## CONCLUSION

For the reasons stated above, Signify's motion to dismiss the TAC is herby DENIED.

**IT IS SO ORDERED.**

Dated: July 18, 2023

MAXINE M. CHESNEY
United States District Judge

---

[11] There is nothing in the TAC stating Tynax, which is alleged to have been acting as Signify's agent (see TAC ¶ 161), was in a position to sell the patents on its own behalf.